PHILBRICK, Appellant, *v.* AMERICAN BANK & TRUST CO. et al., Respondents.

(No. 4,566.)

STATE ex rel. PHILBRICK, Relatrix, *v.* DISTRICT COURT et al., Respondents.

(No. 4,664.)

(Submitted September 17, 1920. Decided October 18, 1920.)

[193 Pac. 59.]

*Estates of Deceased Persons—Testamentary Trusts—Termination — Jurisdiction — Equity—Wills—Construction—Supervisory Control.*

Testamentary Trusts—Termination—Exclusive Jurisdiction..
  1. *Held,* that section 7698, Revised Codes, confers exclusive jurisdiction upon the district court when sitting as a probate court, to determine whether the purpose of a testamentary trust has been accomplished, wherever it has acquired jurisdiction of the estate by probate of the will which has created a trust to continue after final distribution.

  [Jurisdiction of probate court to administer testamentary trust, see note in 21 Ann. Cas. 255.]

Probate Courts—Extent of Jurisdiction.
  2. While the jurisdiction of the district court, when exercising its probate powers, is special and limited, depending upon the provisions of the Code, yet by implication it also possesses all the powers in-

cidentally necessary to an effective exercise of the powers expressly conferred.

District Courts—Equity Power—When not to be Invoked.

3. The equity power of the district court may not be invoked by a litigant to obtain any relief when a plain, speedy and adequate remedy is afforded in the ordinary course of law.

Same.

4. Since section 7698, Revised Codes, affords a plain, speedy and adequate remedy for the termination of testamentary trusts in probate proceedings then pending before the district court, a demurrer to a complaint in equity seeking the same relief was properly sustained and the cause dismissed.

Supervisory Control—Availability of Remedy by Appeal—When not Bar to Writ.

5. The fact that an appeal lies from an order sought to be annulled on application for writ of supervisory control, is ordinarily a conclusive reason for denial of the application; where, however, the facts alleged make out an exigent case and it is apparent that the appeal will not afford adequate relief it is sufficient to warrant action by the supreme court.

Testamentary Trust—Wills—Construction.

6. A will under which all of testator's estate was bequeathed to one of his sisters to be held in trust for another who was to receive a stated amount each year for life, the trustee to have what remained at the death of the beneficiary, construed, and *held* that it was the intention of the testator that the trust should continue during the life of the beneficiary and that therefore the latter, as only heir of the trustee, was not entitled to have the entire estate delivered to her on the death of the trustee.

*Appeal from District Court, Cascade County; H. H. Ewing, Judge.*

SUIT by Lavin C. Philbrick against the American Bank & Trust Company and others to have a trust declared terminated and the trust estate delivered to her. Decree for defendants, and plaintiff appeals. After appeal, plaintiff made application to the supreme court for writ of supervisory control to annul an order of the district court dismissing the suit. Judgment affirmed, and motion to quash order to show cause sustained.

*Messrs. Galen, Mettler & Toomey, Mr. A. H. Gray* and *Mr. Stephen J. Cowley,* for Appellant, in Cause No. 4,566, submitted briefs; *Mr. Gray, Mr. Cowley* and *Mr. Albert J. Galen* argued the cause orally.

According to our interpretation of the provisions of this will, the testator's property vested in the appellant at the

time of the testator's death, and under the terms of the will and in view of the provision of section 4788, Revised Codes, she could not be divested of the estate except upon her death. The death not having occurred, and the death of the contingent remainderman having occurred, it would seem as if the absolute title now reposes in appellant. This is especially true since the question as to creditors' rights does not arise herein.

It is not only the rule of the Codes but is likewise the rule of equity that titles should vest at the earliest possible period. "For many reasons, not the least of which are that testators usually have in mind the actual enjoyment rather than the technical ownership of their property, and that sound policy as well as practical convenience requires that titles should be vested at the earliest period, it has long been a settled rule of construction in the courts of England and America, that estates, legal and equitable, given by will, should always be regarded as vesting immediately unless the testator has by very clear words manifested an intention that they should be contingent upon a future event." (*McArthur* v. *Scott,* 113 U. S. 340, 28 L. Ed. 1015, 5 Sup. Ct. Rep. 652 [see, also, Rose's U. S. Notes].)

That the time of payment was delayed or postponed by the testator in no manner disturbs the contention that the estate vested in the appellant at the death of the testator. "Where the time of payment or distribution is merely postponed for the convenience of the fund or property, or to let in others, the vesting will not be deferred until that period." (*Tayloe* v. *Mosher,* 29 Md. 443; 2 Williams on Executors, 7th ed., 1344.)

"Where, in the case of such a legacy, words of contingency or condition are used, which may be construed as applying either to the gift itself or to the time of payment, courts are inclined to construe them as applying to the time of payment, and to hold the gifts as vested." (*Dale* v. *White,* 33 Conn. 294; *Williams* v. *Williams,* 135 Wis. 60, 115 N. W. 342.)

There is nothing whatever to be gained by a continuation of the trusteeship in this case except such monetary benefits as are being enjoyed by the trustee. Each day the trust continues the estate is being dissipated to the extent of the trustees' charges for administering the trust. This ought not to be permitted to continue.

That the court possesses ample power to terminate this trusteeship is evidenced by an abundance of respectable authority. (*Eakle* v. *Ingram,* 142 Cal. 15, 100 Am. St. Rep. 99, 75 Pac. 566; Perry on Trusts, sec. 920; 39 Cyc. 96–98; Thompson on Wills, sec. 357.) "An active trust will not be continued for the mere benefit or the pleasure of the trustee where it has no further object to accomplish for the benefit of the *cestui que trust.*" (*Ogden's Appeal,* 70 Pa. St. 501; *Kohtz* v. *Eldred,* 208 Ill. 60, 69 N. E. 900; *Slater* v. *Hurlbut,* 146 Mass. 308, 15 N. E. 790.)

If it were true that some sort of an estate did vest in Helen Philbrick by virtue of the provisions of the will, which we deny, her death prior to that of her sister created a merger of all titles and interests in the latter and by reason thereof, if for no other reason, appellant has the right to maintain this action and have the estate freed from the trust.

"Whenever a great estate and a less coincide and meet in one and the same person, without any intermediate estate, the less is immediately annihilated, or in the law phrase it is said to be merged in the greater." (16 Cyc. 665–667; 39 Cyc. 103.) We have been able to discover a case very similar to the present one, wherein our contention was sustained, and submit the same to the court's consideration. (See *In re Dekay,* 4 Paige (N. Y.), 403; also, *Neely* v. *Phelps,* 63 Conn. 251, 29 Atl. 128.)

*Mr. I. W. Church* and *Mr. Fletcher Maddox,* appearing as *amici curiae,* submitted a brief; *Mr. Maddox* argued the cause orally.

To terminate a trust clearly created by will, something stronger is required than the death of the person entitled to

the remainder. The plaintiff assumes that because of the third clause providing that the estate should descend to Helen in the event of Lavin predeceasing her, the converse of the proposition is also true and that Helen having predeceased Lavin, the estate immediately descends to the latter. But this would write a new will for Samuel Philbrick. He created a trust estate for a particular purpose,—the support of his sister as long as she lived and the trust fund lasted. The purpose for which the trust was created is still existent. Lavin Philbrick is still living; the trust fund still exists. Now, because the person who by the will would succeed to the trust fund has deceased, it is contended that the trust should therefore cease and the fund be delivered to the trustee. But testamentary trusts are not terminated in this manner. Suppose the will did not contain clause 3 at all and no provision was made for the disposition of the trust fund in the event of the death of Lavin, then clearly the death of Helen could not operate to terminate the trust, and it would continue as long as Lavin lived and the fund remained unexhausted, and both sisters dying before the fund was exhausted, it would pass to some remote heirs.

Trust estates are not terminated because of provisions in a will directing disposition of the trust fund on the death of the beneficiary. Section 5405, Revised Codes, provides; "A trust is extinguished by the entire fulfillment of its object or by such object becoming impossible or unlawful." There being no active provision in the will by which the trust was to be terminated and the third clause relating only to the devolution of the estate in case of Helen surviving Lavin, it follows that section 5405 must control. The object of the trust which was to provide an annuity has not been entirely fulfilled, since both Lavin and the fund exist; nor has such object become impossible or unlawful.

It is clear that the testator intended that his sister Helen or her successor should hold this fund as long as Lavin lived, or as long as the fund existed. There is not a hint or ex-

pression of any kind in the will to indicate any intent on the part of the testator to make the survival of the trust contingent upon the survival of Helen. "When the will does not fix any particular time for the termination of the trust, it will continue so long as may be necessary to accomplish the purpose for which it was created, and it will terminate when those purposes are accomplished." (40 Cyc. 1807.) "The duration and termination of a testamentary trust depend primarily upon the provisions of the will and the question is one of construction of the particular will under consideration." (40 Cyc. 1809.) It is well settled as a general rule that a testamentary trust will not fail because of failure to name a trustee, or because of refusal, death or incapacity of the trustee named; but in such case the court will appoint a trustee. (40 Cyc. 1820.)

Samuel Philbrick's will was a gift of the income of property to be terminated only upon the death of Lavin with remainder to Helen. The death of Lavin was the distinct and only time limit to the gift, subject only to the contingency of the exhaustion of the estate. It seems well settled that a gift of income followed by the gift of the *corpus* on the happening of a contingency or on the death of the beneficiary, by necessary construction, without express words, is a gift of the income for the intermediate period only. (*Matter of Smith,* 131 N. Y. 239, 27 Am. St. Rep. 586, 30 N. E. 130.)

On the death of Samuel Philbrick, the interest of Helen was a future interest in the remainder. This interest was vested because at the time of Samuel Philbrick's death, Helen was living and would have been entitled to immediate possession of the property on the death of Lavin. (Rev. Codes, secs. 4448, 4453.) A vested remainder is a present interest in the property, which the remainderman may convey by deed. (16 Cyc. 652.) Likewise he may mortgage it or bequeath or devise it by will. (*Watson* v. *Cressey,* 79 Me. 381, 10 Atl. 59.) The interest of Helen on the death of Samuel Philbrick

was therefore a vested remainder, and as such passed to her heirs and devisees.

In *Redman* v. *Hubbard,* 140 Ky. 71, 37 L. R. A. (n. s.) 728, 130 S. W. 955, it was held that under a will directing that an estate be held for the use of testator's son and family for life and that after his death the propetry should pass to his parent, the descendant of any child to take the share which its parent would have taken if alive at the time, ·the interest of the child is vested and the father will inherit from the child which dies in his lifetime without issue. We also call the court's attention to the large collection of cases in a note to the *Redman Case* and particularly to the cases of *Hudgens* v. *Wilkins, Cartensen's Estate, Flanagan* v. *Staples,* and *Wright* v. *Dugan,* It is therefore respectfully suggested that the plaintiff's complaint was properly dismissed.

*Messrs. Galen & Mettler,* for Relatrix, in Cause No. 4,664, submitted a brief; *Mr. Albert J. Galen* argued the cause orally.

*Mr. I. W. Church* and *Mr. Fletcher Maddox,* for Respondents, submitted a brief; *Mr. Maddox* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The will of Samuel C. ·Philbrick, deceased, was admitted to probate by the district court of Cascade county. After directing the payment of the expenses of the testator's last sickness, burial, *etc.,* the will provided:

"Second. I give and bequeath to my sister Helen M. Philbrick of Detroit, Michigan, all of my real and personal estate to be held by her as trustee for my sister Lavin C. Philbrick of Waterville, Le Seuer county, Minnesota, and it is my wish and will that my sister Helen M. Philbrick hold all the said property as such trustee, for the benefit of my sister Lavin C. Philbrick, and I further authorize my said trustee to invest such property as she may see fit, and it is my wish and will

that she, as such trustee, pay to my sister Lavin C. Philbrick the sum of one thousand ($1,000) dollars each year, providing that if the income from my estate exceeds the sum of one thousand ($1,000) dollars, then it is my wish and will that my trustee above mentioned, pay to my said sister Lavin C. Philbrick the whole of such income, it being understood that if the income does not reach the sum of one thousand ($1,000) dollars, she shall have the sum of one thousand ($1,000) dollars each year, even if resort has to be made to the principal.

"Third. It is my further will and wish that in the event my sister Lavin C. Philbrick should die before my sister Helen M. Philbrick, that the whole of my estate go to and descend to my said sister, Helen M. Philbrick.

"Lastly. I hereby nominate and appoint my said sister Helen M. Philbrick of Detroit, Michigan, the executrix of this, my last will and testament and hereby revoke all former wills by me made, and it is my wish that she administer without bond."

Such proceedings were had thereafter that the assets of the estate were distributed to Helen M. Philbrick as trustee. After brief service in that capacity, she resigned and the district court appointed S. E. Atkinson in her stead. Some time prior to June 20, 1918, Atkinson died, and on that day the court appointed the American Bank & Trust Company of Great Falls, a Montana corporation, to fill the vacancy. The trust estate then consisted of money and securities aggregating approximately a value of $14,000, besides a house and lot in the city of Great Falls. On June 22, 1918, Helen M. Philbrick died and left Lavin C. Philbrick her only heir at law.

On December 3, 1918, Lavin C. Philbrick commenced an action in equity against the trustee to obtain a decree declaring the trust terminated by the death of Helen M. Philbrick and directing the trustee to deliver the trust funds and property to her. To this action seven persons, other than the trustee, were also made defendants. It was alleged that they are cousins of plaintiff; that they are the sole surviving rela-

tives of the deceased, other than the plaintiff; that they claim an interest in the trust fund and property as heirs of the deceased, but that their claim is without right. The trustee appeared in the action by interposing a general demurrer to the complaint. The other defendants failed to appear, and default was entered against them. Thereafter, on August 1, 1919, counsel for the trustee by stipulation with counsel for the plaintiff withdrew the demurrer and permitted the default of this defendant to be entered. Counsel then applied to the court for the relief demanded in the complaint. After consideration, the court held that the facts stated were not sufficient to justify any relief, and, plaintiff declining to amend, rendered judgment dismissing the action. From this judgment, plaintiff appealed to this court.

In the meantime, pending the appeal, the plaintiff, concluding that she had mistaken her remedy in bringing the action, filed a petition in the district court in the probate proceeding, entitled "In the Matter of the Estate of Samuel C. Philbrick, Deceased," seeking the desired relief under the provisions of section 7698 of the Revised Codes. The trustee, being ordered by citation to submit his final account and to show cause why the plaintiff should not have the relief demanded, answered the petition, alleging that the facts stated therein presented the same question as that presented in the action which was pending on appeal, and asked that it be dismissed. The court sustained this contention and dismissed the petition. Thereupon the plaintiff, as relatrix, instituted an original proceeding in this court, asking it for an order, under its supervisory jurisdiction, annulling the order of the district court dismissing the petition, and commanding that court to grant the relief demanded.

As reason why this court should assume original jurisdiction it is alleged in the petition that relatrix is advanced in years, and is dependent for food, clothing and shelter upon the property devised to her under the will of her brother; that by reason of the constantly increasing cost of living, and the

decrease of income yielded by the trust estate, it has become impossible for her to support, clothe and shelter herself upon the income; and that it has become necessary for this reason that she have the whole of the estate delivered to her free from the trust, in order that she may make use of it to meet her necessities.

In response to an order issued by this court requiring the respondent court and its judge to show cause why the relatrix should not be granted relief, counsel appearing in their behalf filed a motion to quash the order to show cause and dismiss the proceeding, on the ground that the facts stated in the petition are not sufficient to warrant relief. The proceeding was set for final hearing on September 17 upon the question raised by the motion. The appeal in the equity case was set for hearing on the following day. At the hearing of the former, it being agreeable to counsel, the two causes were consolidated, heard and submitted together. In addition to argument on the merits, counsel presented these questions of procedure: Whether, in view of the provisions of section 7698, the district court had jurisdiction to entertain an independent action to terminate the trust; whether an appeal lies from the order dismissing the petition in the probate proceeding; and whether this court for this reason should not have refused to entertain the original proceeding.

Section 7698 of the Revised Codes, in our opinion, confers [1] jurisdiction upon the district court, when sitting as a probate court, to determine whether the purpose of a testamentary trust has been accomplished, wherever it has acquired jurisdiction over the administration of the estate by probate of the will, which has created a trust to continue after final distribution. It declares that ''Where any trust has been created by or under any will to continue after distribution, the district court shall not lose jurisdiction of the estate by final distribution, but shall retain jurisdiction thereof for the purpose of the settlement of accounts under the trust.'' It declares further that any such trustee may, from time to time

during the continuance of the trust, or at the termination thereof, "render and pray for the settlement of his accounts as such trustee before the district court in which the will was probated and in the manner provided for the settlement of the accounts of executors and administrators." It also declares that "any such trustee may, in the discretion of the court or judge, upon application of any beneficiary of the trust, be ordered to appear and render his account after being cited by service of citation as provided for the service of summons in civil cases."

The jurisdiction of the district court, when exercising its [2] probate powers, is special and limited, depending upon the provisions of the Code. By implication it also possesses all the powers incidentally necessary to an effective exercise of the powers expressly conferred. (*In re Davis Estate,* 27 Mont. 490, 71 Pac. 757; *In re Dolenty Estate,* 53 Mont. 33, 161 Pac. 524.) Since the statute expressly declares that the court retains jurisdiction, after distribution, to examine and settle the accounts of the trustee, not only during the continuance of the trust, but also at its termination, and that the trustee may be compelled by it to make an accounting upon the application of any beneficiary under the trust, it seems to us that by necessary implication it confers the power, also, to ascertain when the purpose of the trust has been accomplished, and thereupon to declare it terminated, and to direct the trust fund and property to be delivered to the person or persons entitled to them. Otherwise, in every case, though the trustee has rendered his final account, and it has been found correct and the purpose of the trust has been accomplished, an action would be necessary to terminate the trust and discharge the trustee.

The statute of California (Code Civ. Proc., sec. 1699), except in the mode of procedure prescribed by it, contains substantially the same provisions as ours, *supra.* In the case of *McAdoo* v. *Sayre,* 145 Cal. 344, 78 Pac. 874, the supreme court of that state, after a full and careful consideration of

it, held that, whenever the power of the superior court having jurisdiction over a trust created by a will is invoked in a proceeding under the statute it has the general power, and it is its duty, if the purpose of the trust has been accomplished, to declare it terminated and to dispose of the entire matter by directing the trust property and assets to be delivered to the person or persons entitled to them. We agree with the conclusion of the California court as to the scope of the provision and accept it as the only logical one. It follows logically from this conclusion that the special jurisdiction conferred by the statute is exclusive.

It is the general rule that the equity power of the court [3, 4] may not be invoked by a litigant to obtain any relief, when a plain, adequate and speedy remedy is afforded in the ordinary course of law. Inadequacy or deficiency of the legal remedy is the fundamental concept of equity jurisdiction. (*Wilson* v. *Harris*, 21 Mont. 374, 54 Pac. 46; *Raymond* v. *Blancgrass*, 36 Mont. 449, 15 L. R. A. (n. s.) 976, 93 Pac. 648.) The remedy conferred by the statute is plain, adequate and speedy. It is plain because the statute declares that the court retains jurisdiction over the trust during its continuance. It is adequate because the court may, in the probate proceeding, which is still pending for the purpose of administering the trust, call to its aid all the facilities which are available on the trial of an ordinary action in equity. The same judge who presides in ordinary actions exercises the powers conferred by the statute. The remedy is more expeditious than can be afforded in such an action, because the procedure is simple and summary in character, and is not subject to the delays that are ordinarily incident to the commencement and conduct of formal actions.

The particular reason for which the court sustained the demurrer is not apparent. The result arrived at, however, was correct, and the judgment before us on appeal must be affirmed.

We shall not stop to determine whether the relatrix could have appealed to this court from the order dismissing her petition in the probate proceeding. It is not clear that the statute (Rev. Codes, sec. 7098) authorizes an appeal from such an order.

The fact that an appeal lies from an order is ordinarily [5] a conclusive reason why this court will not exercise its extraordinary supervisory power to review it. This is not always so, however. If the facts make out an exigent case, and it is apparent that the appeal will not afford adequate relief, this is sufficient to warrant action by this court notwithstanding the appeal. (*State ex rel. Whiteside* v. *District Court*, 24 Mont. 539, 63 Pac. 395; *In re Weston*, 28 Mont. 207, 72 Pac. 512.) When the application for the writ was made, this court was of the opinion that the facts disclosing the condition and necessities of the petitioner made out a sufficient exigency to justify an inquiry whether she should have speedy relief. The district court dismissed the petition for the reason that the action seeking the same relief was still pending. Inasmuch as we have assumed jurisdiction by the original proceeding, we have concluded to take up the case as made by the petition and determine it on the merits, without regard to the reason upon which the lower court based its order dismissing it. In doing so, however, we do not wish to be understood as relaxing in any degree the restrictions heretofore observed in granting relief under our summary supervisory jurisdiction.

The contention of counsel for the relatrix is that by the terms of the will Helen M. Philbrick was to receive no part [6] of the estate except upon the contingency that she survived her sister; that, not having survived and the testator having fixed no term in the will during which the trust must continue, the death of Helen *ipso facto* extinguished the trust; and that under the doctrine of merger the plaintiff became vested with the entire estate and is entitled to have it distributed to her, free from the restrictions of the trust. In

other words, the intention of the testator was, first, to provide for the support of relatrix during her life; and, second, to preserve whatever should remain of the estate ·at her death for the benefit of Helen, and, the beneficial interest of Helen having lapsed by her death, the whole purpose of the trust has been accomplished.

The rules applicable to the construction of wills laid down in our Code, so far as they are pertinent here, are the following: "A will is to be construed according to the intention of the testator." (Rev. Codes, sec. 4763.) "In cases of uncertainty arising upon the face of the will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations." (*Id.*, sec. 4764.) "All the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole.   *   *   *   "   (Sec. 4767.) We find no uncertainty upon the face of the will as to the intention of the testator. If there were, we are not aided by knowledge of the circumstances under which the testator executed it, for none of these circumstances appear from the petition, other than that the testator had only two sisters, and that he wished to dispose of his estate for the benefit of one of them to the exclusion of the other, except upon the contingency that the latter should survive the former. It is obvious from clause 2 that the intention of the testator was to set apart his whole estate to provide an annual income of not less than $1,000 for relatrix during her life through the instrumentality of a trusteeship, and for this purpose to authorize the trustee, whenever the necessity might arise, to resort to the *corpus* of the trust property, even if the final result would be the exhaustion of the entire estate. This was clearly the controlling idea in the mind of the testator. Why a provision for a trustee should have been made at all is not apparent. So far as we can judge, the intention may have been prompted by the feeble condition of the health of

the relatrix, or by her lack of business capacity, or her spend-thrift habits. This, however, is merely speculation. No fact or circumstance appears from the petition justifying any conclusion as to what may have been the testator's motive. Whatever his motive may have been, there can be no doubt of his main purpose. That he selected his sister Helen to act as trustee argues nothing other than that she was his nearest other relative, and was regarded by him competent to carry out his wish. The bequest of the remainder of the estate to the trustee upon the contingency that she should survive her sister is not in any way inconsistent with the main purpose, but merely indicates the wish of the testator that such part of the estate, if any, should remain after the main purpose had been accomplished, should go to his only other surviving relative. The trustee was given an unlimited discretion in making investments, but this did not vest in her an absolute discretion with regard to the execution of the main purpose of the trust. Nor does it indicate that the trust should terminate in case she should die before her sister. Let it be assumed that she had died before the testator or before she had qualified after his death. In that case, if the contention of relatrix is maintainable, the obvious intention of the testator would have been defeated. In our opinion, it appears from the terms used by the testator that he intended the trust to continue during the life of the beneficiary, or until the final exhaustion of the estate, by providing her the annual income. There is therefore no merit in the contention of counsel.

The judgment appealed from in the equity case is affirmed. The motion to quash the order to show cause in the original proceeding is sustained, and the petition is dismissed.

ASSOCIATE JUSTICES HURLY and COOPER concur.