IN RE ROBERTS' ESTATE. ROBERTS, RESPONDENT, *v.*
GRAY ET AL., APPELLANTS.

(No. 7,493.)

(Submitted March 11, 1936. Decided May 5, 1936.)

[58 Pac. (2d) 495.]

*Mr. W. H. Morrissey,* of the Bar of Redwood City, California, *Messrs. Brobeck, Phleger & Harrison,* of the Bar of San Francisco, California, and *Mr. O. B. Kotz,* for Appellants, submitted a brief on the merits, and an original, a reply and a rebuttal brief on motion to dismiss appeals; *Mr. Moses Lasky,* of the San Francisco Bar, of Counsel, argued the cause orally.

242

244

*Messrs. Hall & McCabe,* for Respondent, submitted a brief on the merits and an original, a reply and a supplemental brief on motion to dismiss appeals; *Mr. H. C. Hall* argued the cause orally.

246

248

.MR. JUSTICE STEWART delivered the opinion of the court.

Appeals from the district court of Cascade county. Julia Roberts died testate on the 8th day of October, 1930. At the time of her death she was a resident of California, but left property, both real and personal, in California and Montana. She was survived by two sons, Milton Louis Roberts and Elmore William Roberts, and by one brother, John Stotter, a resident of California. Her will was duly probated in the district court on November 19, 1930. It recited that decedent was a widow at the time of the execution thereof, January 4, 1930, and that her only living children were Elmore William Roberts, aged 37, and Milton Louis Roberts, aged 34.

The estate proceeded through administration and on December 2, 1931, a decree of distribution was entered. By the terms of this decree, and in accordance with the provisions of the will, distribution of certain small bequests was made to outside parties, and all of the residue of the estate, both real and personal, was distributed to the Great Falls National Bank, a corporation, as trustee. The will provided that all of such residue was given, devised and bequeathed to the Bank of Italy National Trust & Savings Association, a national banking association, to be held in trust for the uses therein expressed. The Bank of Italy renounced its right to be appointed as trustee; in its stead the Great Falls National Bank, Great Falls, Montana, was appointed and all of the property distributed to it. A decree of final discharge of the administrators or executors of the will was duly entered on December 9, 1931.

The important paragraphs of the will read as follows:

"Sixth. All of the rest, residue and remainder of my estate, whether the same be real, personal or mixed, of whatever kind or character and wheresoever the same may be situated, of which I may die seized or possessed, or in which I may have any interest or.right of testamentary disposition or power of appointment at the time of my death, I hereby give, devise and bequeath to Bank of Italy National Trust & Savings Associa-

tion, a national banking association, to be held in trust, nevertheless, subject to the following uses, terms, conditions and limitations:

"(e) The entire net income received and derived from the trust estate shall go and be paid monthly or quarterly, as follows: Each of my said sons shall receive therefrom the sum of six hundred ($600.00) dollars per month for the term of five (5) years from and after the date of distribution to said trustee and the remainder of said net income is to be added to the principal of the trust estate; after the end of the said five (5) year period, the entire net income shall be divided equally between my said sons, until the death of the last one surviving and should the one dying first leave issue of his body surviving, then said issue shall receive the income to which his father would have been entitled until the termination of this trust, but should the one dying first leave no issue, then the entire net income shall go to the survivor until his death.

"(f) This trust shall cease and terminate upon the death of the last survivor of my said sons, whereupon my said trustee shall pay, deliver and convey all of the trust estate then remaining in his hands to the surviving bodily issue of my said sons, per capita, if any, and if there is no such surviving issue then the entire trust estate shall be distributed to my heirs in accordance with the laws of succession of the state of California then in force.

"I have purposely made no provision for any other person, whether claiming to be an heir of mine or not, and if any person, whether a beneficiary under this will or not, mentioned herein, shall contest this will or object to any of the provisions hereof, I give to such person so contesting or objecting the sum of one dollar ($1.00), and no more, in lieu of the provisions which I have made or which I might have made for such person so contesting or objecting."

A copy of the will was attached to and made a part of the decree of distribution, and thereafter the Great Falls bank proceeded to administer the trust.

On January 25, 1935, Elmore William Roberts, one of the sons, filed a petition in the district court of Cascade county, under the provisions of section 10352, Revised Codes 1921. The petition recited the execution of the will, the probate thereof, the administration of the estate, and all of the things preceding the filing of the petition itself. It set forth the provisions of the will already recited herein, and alleged that such provisions were invalid and of no force and effect because they were in conflict with certain enumerated statutes of Montana.

In conformity with the prayer of the petition, a citation was issued requiring all persons interested in the matter to appear and show cause on the 13th day of March, 1935. The citation was delivered to the sheriff of Cascade county for service, and service was made upon the bank. The sheriff's return recited that it was impossible to make service in Montana upon Milton Louis Roberts and John Stotter. Application for an order for publication was made by affidavit of counsel. The court made an order that Milton Louis Roberts and John Stotter be served by publication. Alias citation issued on January 26, 1935. In lieu of publication, personal service was made upon Milton Louis Roberts and John Stotter, both in California. The service on Milton Louis Roberts was made by a deputy sheriff on February 4, 1935, and return thereof was made under oath. Milton Louis Roberts never appeared in the proceedings, but Maria Frances Gray, formerly Maria Frances Stotter, and John Stotter appeared by answer filed March 13, 1935, the day set for hearing the petition.

The answer admitted the essential facts of the execution of the will by Julia Roberts and of the administration and distribution of her estate in accordance with the will. It denied the illegality of the trust provisions of the will, and alleged that at the time of the death of decedent there were living her two sons and a brother, one John Stotter; that said John Stotter had died since the death of his sister, the testatrix, and that the answering parties were his surviving children and only heirs at law; that as such successors and heirs at law of John

Stotter, deceased, the answering parties were the legatees entitled to take all that portion of the estate designated to go to the heirs of Julia Roberts upon the demise of her sons without issue. The answer further recited the provision of the will relative to penalty and forfeiture to be enforced against anyone who sought to break the will, or who objected to any of the provisions thereof. It also recited that the sons from the date of the entry of the decree of final distribution until that time had received the income as provided by the will; and finally prayed that the petition of Elmore William Roberts be denied and the decree of distribution be adjudged to be final, and that Elmore William Roberts be denied further participation in the estate by reason of the recited provisions.

The bank filed an answer, admitting and denying allegations of the petition, and finally praying that the relief be denied and the decree of distribution be allowed to stand.

On March 13, 1935, the date designated in the citation, the matter came on for hearing upon the petition and upon the answer of Maria Frances Gray and John Stotter. At that time no reply had been filed by petitioner. The matter was taken under advisement by the court, and each side was instructed to file briefs. Two days later, on March 15, 1935, petitioner served and filed a reply; it denied, upon information and belief, that Maria Frances Gray and John Stotter were the surviving heirs of their father, John Stotter.

On May 10, 1935, appellants Gray and Stotter made application to the court for authority to take depositions to establish the relationship and heirship of Gray and Stotter. The application for authority to take the depositions was resisted on the ground that no application was made to open the case for further testimony, and that the case had been closed. The judge denied the application to take depositions.

On July 8, 1935, the court made and caused to be entered what was denominated an ''Order and decree.'' From the recitations of this decree it is evident that the court considered that the whole matter had been submitted at the time of the

hearing, and that the issues had been settled and made up at that time, and that the reply thereafter filed was of no force and effect in the premises. This, in fact, was the basis for the refusal of the court to open the matter for further testimony by way of deposition.

The decree recited at great length all of the facts with relation to the estate, and repeated the provisions of the will with relation to the trust. It found that the trust provisions of the will were illegal and terminated the trust; ordered the discharge of the bank as trustee; declared that Elmore William Roberts and Milton Louis Roberts were the owners in fee simple of the property held by the trustee, and recited "that the title of the said Elmore William Roberts and Milton Louis Roberts in and to the property herein described and the whole thereof be and the same is hereby quieted against all persons claiming or to claim an interest therein under the terms of said will, decree or otherwise." It was further decreed that the Great Falls National Bank, as trustee, and Gray and Stotter be forever enjoined and restrained from claiming any right, title or interest in and to the property adverse to the right, title and interest of Elmore William Roberts and Milton Louis Roberts.

Thereafter Gray and Stotter proceeded to appeal from the judgment, but did not attempt to make any service upon Milton Louis Roberts. It will be remembered that Milton Louis Roberts had not appeared in the proceedings at any time, although he had been served with the alias citation containing the notice of the hearing on the petition. The question as to the sufficiency of the appeal without service upon Milton Louis Roberts was raised by motion to dismiss the same.

On December 27, 1935, there was filed and served a second notice of appeal identical in wording to the notice of appeal theretofore filed. A second undertaking on appeal was also filed.

Two attempted appeals are before us. The only difference in them is that in the first one Milton Louis Roberts was not

served, whereas on the second appeal service was made upon him.

Motion to dismiss first appeal: Respondent filed a separate motion to dismiss the appeal first taken. Hearing upon that motion was postponed until the argument upon the merits. In disposing of the motion, we must keep in mind that the proceeding instituted in the district court was under the provisions of Chapter 55, Part IV of the Code of Civil Procedure, section 10352 et seq., of the Probate Practice Act. Section 10352 provides: "Where any trust has been created by or under any will to continue after distribution, the district court shall not lose jurisdiction of the estate by final distribution, but shall retain jurisdiction thereof for the purpose of the settlement of accounts under the trust." The section then provides that any trustee created by a will or appointed to execute any trust, may from time to time, pending the execution of the trust, or at the termination thereof, render and pray for the settlement of his account as such trustee before the district court in which the will was probated, and in the manner provided for the settlement of the accounts of executors and administrators. It further provides that upon the filing of a petition in the matter, the court or judge shall fix a day for the hearing, and issue a citation citing all the beneficiaries of the trust to appear and show cause, etc.; that the citation shall be personally served upon all the beneficiaries in the state in the manner provided for the service of summons in civil actions; and that the citation shall be served upon all the beneficiaries who shall appear by affidavit to be absent from the state, by publication, in such manner as the court or judge may order, for not less than two months.

It will be observed that the petitioner here proceeded in accordance with the practice in civil actions, and to that end made service on the nonresident beneficiaries by substituted service as required by the Code of Civil Procedure involving civil actions. The alias citation was issued on January 26, 1935, and

was served upon Milton Louis Roberts by a deputy sheriff in California on February 4, 1935.

The hearing on the petition was fixed for, and occurred on, March 13, 1935. The service on John Stotter was made in California on February 9, 1935. The John Stotter who was a brother of decedent, was dead at the time, and his son and daughter filed their answers on the day of the hearing. No question has been raised as to service on the Stotter heirs; if there was any irregularity, it was cured by their appearance. But Milton Louis Roberts did not appear; however, no default was ever entered as to him. Nothing appears in the record to show that any question was raised about his failure to appear or about the regularity of service upon him. The hearing proceeded without him, although it is evident that he was not given the full 60-day notice mentioned in section 10352, supra. In fact, no question was raised as to this matter until the appeal was taken to this court by the Stotter heirs, and until after respondent had filed his motion to dismiss the appeal. The motion to dismiss this appeal was based solely upon the failure to serve the notice of appeal upon Milton Louis Roberts, one of the brothers and one of the beneficiaries under the trust created by his mother's will.

Before proceeding to a discussion of the motion proper, which involves the question of whether Milton Louis Roberts was an adverse party upon whom service of notice of appeal was required, we pause to consider the objection made by appellants as to the original service made upon Milton Louis Roberts. Appellants claim that he was never a party to the proceeding, "much less an adverse party," for two reasons: (1) That he was not properly served with process; and (2) that in proceedings under the sections of the Code involved, no person can be regarded as a party who does not appear and take part in the proceeding. We believe there is no merit in this contention. While the statute does require that notice be given to all of the beneficiaries of the trust in the first instance, the record does show that a service was made upon Milton Louis Roberts

in California. It is true that it does not show that 60 days' notice was given.

We do not believe that appellants are now in a position to complain as to the service made on Milton Louis Roberts. ■ A party cannot avail himself of defects in the service of summons on other parties. (*Adams* v. *Hopkins*, 144 Cal. 19, 77 Pac. 712; *Nichols* v. *Nichols*, 135 Cal. App. 488, 27 Pac. (2d) 414; *Salzer Lumber Co.* v. *Lindenmeier*, 54 Colo. 491, 131 Pac. 442; *Callender* v. *Crossfield Oil Syndicate*, 84 Mont. 263, 275 Pac. 273; 2 Cal. Jur. 843, sec. 494; 1 Kerr's Pleading & Practice in the Western States, 277, sec. 220.) Certainly, the appellants here are not in a position to urge that Milton Louis Roberts was not a necessary party to the original proceeding. They now urge that he is not a necessary party to the appeal, because he was not properly served in the beginning, and that therefore he was not a party at all. We see no force in this argument. We are of the opinion that Milton Louis Roberts was a necessary party at all stages of the proceeding. We hold, however, that the appellants here are not now in a position to attack the service made upon him in the beginning.

As to the necessity for the service of the notice of appeal to this court upon Milton Louis Roberts, we are impressed by the fact that timely objection was made to the consideration of the appeal upon its merits because of the failure to serve him with the notice thereof. The controlling statute under which the appeal to this court was taken is section 9733, Revised Codes 1921, which reads as follows: "An appeal is taken by filing with the clerk of the court in which the judgment or order appealed from is entered, a notice stating the appeal from the same, or some specific part thereof, and serving a similar notice on the adverse party, or his attorney."

This court has frequently endeavored to define an "adverse party." In the early case of *T. C. Power & Bro.* v. *Murphy*, 26 Mont. 387, 68 Pac. 411, 412, the matter was given careful consideration. There it was said that "a party is adverse who has an interest in opposing the object sought to be

accomplished by the appeal." The court then quoted with approval language from the case of *Thompson* v. *Ellsworth*, 1 Barb. Ch. (N. Y.) 624, as follows: "By adverse party is meant 'the party whose interest in relation to the subject of the appeal is in conflict with the reversal of the order or decree appealed from,' or the modification sought for by the appeal." The court elaborated at great length upon the subject, and, in deciding whether a party in that action was an adverse party, said: "A party to a judgment whose rights may be injuriously affected by its reversal or modification is entitled to notice of appeal. The fact that he failed to answer the complaint does not deprive him of such right." It further said: "Not having appealed, he is presumed to be satisfied with the judgment which established such lien, and to object to a reversal of it or to a change in its terms."

In the case of *Anderson* v. *Red Metal Min. Co.*, 36 Mont. 312, 93 Pac. 44, 47, the court repeated that "an adverse party, within the meaning of this statute, is one 'who has an interest in opposing the object sought to be accomplished by the appeal.' " In the case of *In re Murphy's Estate*, 57 Mont. 273, 188 Pac. 146, 148, this court said: "A person interested, within the meaning of the statute allowing an appeal from a decree of the probate court, is one who has some legal right, or is under some legal liability, that may be enlarged or diminished by the decree. * * * This refers to a pecuniary interest which might be established, in whole or in part, by the decree." (See, also, *Mitchell* v. *Banking Corp.*, 81 Mont. 459, 264 Pac. 127; *In re Baxter's Estate*, 94 Mont. 257, 22 Pac. (2d) 182; *In re Toomey's Estate*, 96 Mont. 489, 31 Pac. (2d) 729; *Spokane Ranch & Water Co.* v. *Beatty*, 37 Mont. 342, 96 Pac. 727, 97 Pac. 838.)

It is certain that Milton Louis Roberts is an interested party and that he stands to have something taken away from him by the appeal. Not only that, but the jurisdiction of this court to hear the appeal is involved. In 2 Haynes on New Trial & Appeal, page 1128, section 210, there appears a discus-

sion of the subject, and with reference to the notice of appeal, it is said: "Inasmuch as the objection under consideration goes to the jurisdiction of the appellate court to hear and determine the appeal, any respondent is within his right in raising it, whether he is injured or not by the failure of the appellant to serve necessary parties with the notice of appeal."

In this case the order of the district court directed the delivery of possession of all of the trust property to the two brothers, including Milton Louis Roberts. If the order, or decree, as it is termed, is reversed, Milton Louis Roberts will be required to deliver the property so received by him to some appropriately designated trustee. In our opinion, he is an adverse party within the purview of the appellate statute, and the failure to serve the notice of appeal on him was fatal to the appeal. The motion to dismiss the first appeal must be, and is hereby, sustained.

The second appeal: Under date of November 12, 1935, a second notice of appeal was given. This notice was served upon the attorneys for Elmore William Roberts in Great Falls, Montana, on the 27th day of December, 1935, and upon Milton Louis Roberts on November 14, 1935. A motion to dismiss this appeal was filed, on the ground that the appeal was not taken within time.

Appellants argue that under the provisions of section 10352, supra, the only jurisdiction left in the district court after decree of distribution has to do with the distribution, accounting and settlement of the trust, and that the jurisdiction is limited to such matters. In effect, they argue that the proceeding, being an action to terminate and determine the trust, was an equitable action. In support of their theory, they cite and rely upon the case of *Philbrick* v. *American Bank & Trust Co.,* 58 Mont. 376, 193 Pac. 59, and *McAdoo* v. *Sayre,* 145 Cal. 344, 78 Pac. 874. They assert that the order, or judgment, entered by the court was a final judgment from which the appeal could be taken within six months. They also cite and rely upon the case of *Parkman* v. *Superior Court of Los Angeles County,* 77 Cal.

App. 321, 246 Pac. 334, 335, where the court said: "The real business of the probate court is the settlement of estates of deceased persons. When the order of final distribution and discharge of the executor under the will or the administrator of the estate has been entered, the work of the probate court with reference to the estate is ordinarily ended," etc. They also rely upon the case of *In re Phillips' Estate*, 86 Utah, 358, 44 Pac. (2d) 699, wherein it was held that even though the petition was addressed to the probate division of the court, such a proceeding must be considered as a separate proceeding, and a judgment entered therein a final judgment. From that they argue that the second appeal was timely because taken within six months.

The reasoning of the cited cases is sound, and was approved by this court in *Re Harper's Estate*, 98 Mont. 356, 40 Pac. (2d) 51, 54, where it was said: "The district court, when proceeding under the provisions of section 10352, has the same general jurisdiction and powers as are exercised by a court of equity over trusts," citing *Philbrick* v. *American Bank & Trust Co.*, 58 Mont. 376, 193 Pac. 59; *In re Estate of Hubbell*, 121 Cal. App. 38, 8 Pac. (2d) 530; *Parkman* v. *Superior Court of Los Angeles County*, supra; 11B Cal. Jur. 838.

The asserted contention might be conclusive but for the fact that we have a statute so broad that it includes such a judgment even though the same may be final in its effect. Chapter 56 of Part IV of the Code of Civil Procedure, a part of the Probate Practice Act, sections 10355 to 10376, inclusive, Revised Codes of 1921, contains the following sections:

"10366. New trials and appeals. The provisions of sections 9008 to 9832 of this code, relative to new trials and appeals— except in so far as they are inconsistent with the provisions of sections 10018 to 10464—apply to the proceedings mentioned in the sections last enumerated.

"10367. Within what time appeal must be taken. The appeal must be taken within sixty days after the order or judgment is entered."

It then becomes obvious that it makes no difference whether the so-called "order and decree" was merely an order or actually a judgment or decree. In any event, the time for appeal is controlled by section 10367, supra, and thereby limited to a period of sixty days.

The second appeal must be, and it is hereby, dismissed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

Rehearing denied June 18, 1936.