## In re DOLENTY'S ESTATE.

(No. 3,757.)

(Submitted June 23, 1916.   Decided November 17, 1916.)

[161 Pac. 524.]

*Estates—Policy of Law—Executors and Administrators—Duties and Powers — Liability — Removal — Probate Proceedings — Title to Realty—Jurisdiction—Right to Name Successor.*

Estates—Prompt Administration—Policy of Law.
1.   It is the policy of the law that estates be administered with dispatch, to the end that they shall not be wasted by needless expense incident to delay and the continuation of allowances, to the injury of creditors and those entitled to have distribution made to them.

Same—Executors and Administrators—Unauthorized Disposition of Property.
2.   Where the district court had granted an executrix authority to sell personal property of the estate for cash, she was without power to turn over a portion of it to one for services alleged to have been rendered in keeping her accounts, and was properly chargeable with such property as part of the assets of the estate.

Same—Property—Duties of Executors and Administrators.
3.   Under section 7628, Revised Codes, an executor or administrator is chargeable not only with the assets of the estate which actually came into his hands, but also with those—including rents and profits of real estate which in the exercise of ordinary care and diligence ought to have been received from it—which by reason of his neglect he has failed to get into his hands.

[As to care and skill required of executors and administrators, see note in 12 Am. St. Rep. 311.]

Same—Property—Liability for Loss—Burden of Proof.
4.   The burden of showing that an estate has apparently suffered loss through the neglect of an executor or administrator is upon the heir or creditor who seeks to charge him with the loss.

Same—Reports of Condition—Duty of Executors and Administrators.
5.   An executor or administrator, when called upon by the district court, on the petition of creditors, to make report of the condition of the estate in his hands, must make full disclosure to enable the court to determine whether diligence was exercised in collecting its assets, its value, whether insolvent or not, *etc.*

Same—District Courts—Jurisdiction—Title to Realty.
6.   The district court while sitting in probate has no authority to determine questions of title between an estate and persons claiming adversely to it.

On the right of one first entitled to administration to nominate a third person to exclusion of those next entitled thereto, see note in 22 L. R. A. (N. S.) 1161.

**Same—Executors and Administrators—Removal, When.**

7. Since an estate is an entirety and there can be but a single administration of it, a special administrator may not, during the incumbency of the executrix, be appointed to litigate the question of title to real property claimed by creditors to be part of the estate and by her in her own right; under such circumstances she should be removed, inasmuch as she cannot bring action against herself, and someone appointed in her place to try the question of title. (See, also, Opinion on Motion for Rehearing.)

**Same—Void Sale of Property—Effect.**

8. Where sales of real property belonging to an estate had been declared void, the property remained property of the estate, so that, upon the rendition of an account, the executrix should not have been permitted to charge herself with the proceeds thereof, but was chargeable with the realty itself.

**Same — Executors and Administrators — Removal — Determination of Title.**

9. Merely because it is the policy of the law that the surviving husband or wife shall administer the estate of the decedent spouse is no reason why he or she should not be removed, even though the sole beneficiary, where, because of the threatened insolvency of the estate, the rights of its creditors are imperiled by the neglect or inattention of the one in charge of it.

**Same — Executors and Administrators — Removal — Right to Nominate Successor.**

10. Though a surviving spouse has the right to nominate someone to serve in his or her stead in the administration of the decedent's estate, no such right exists, upon removal for misconduct or for the purpose of permitting trial of an assertion of rights adverse to the estate, since the successor so named would more than likely be biased in favor of the adverse claim.

*Appeal from District Court, Broadwater County, in the Fourteenth Judicial District; Geo. W. Pierson, a Judge of the Thirteenth District, presiding.*

IN THE MATTER of the estate of W. B. Dolenty, deceased. Petition by Con Mannix and others asking that Isabel Dolenty, executrix, be required to present an account and make report. From an order of the district court overruling objections and approving the account filed by the executrix, petitioners appeal. Reversed and remanded.

*Messrs. Walsh, Nolan & Scallon,* for Appellants, submitted a brief; *Mr. C. B. Nolan* argued the cause orally.

*Mr. H. G. McIntire,* for Respondent, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This is an appeal from an order made by the district court of Broadwater county, Honorable Geo. W. Pierson presiding, approving the fourth annual account of Isabel Dolenty, the surviving widow of W. B. Dolenty, deceased, and executrix of his will. Dolenty died on September 15, 1910. His estate consisted of lands and a large amount of personal property. Under the terms of the will the widow is entitled to take substantially the entire estate, subject to the payment of decedent's debts. She qualified as executrix on November 26, 1910, and has since been acting as such. On February 16, 1915, the executrix being in default in presenting her annual account, several of the creditors of the estate, having established claims aggregating about $20,000, presented to the court their petition asking that she be required to present an account and report under oath, disclosing the amount of money received and expended, the amount of claims presented and allowed, with the names of the claimants, and all other matters necessary to show in detail the condition of the estate. The petition charged, in substance, that the executrix had been guilty of mismanagement of her trust in several particulars; that she had failed to account for some of its assets; that she had been guilty of waste; that in certain instances she had turned over property to some of the creditors in discharge of claims due to them, to the detriment of the petitioners and other creditors, the estate being insolvent; and that, except as to such claims, none of the debts due the creditors had been paid. On February 19, 1915, the court made an order directing the executrix to file on or before March 15 a full and complete report and account of all her acts and transactions since the filing of her last account, and to make full disclosure of the condition of the estate. The account having been filed in response to the order, the petitioners interposed objections to the approval thereof. Some of these question the right of the executrix to be credited with certain items paid by her as expenses of admin-

istration. Most of them challenge the conduct of the executrix as a whole, specifying particular instances of neglect and mismanagement resulting in loss of assets, or a misapplication of them to her own use, or for the benefit of certain creditors. After a hearing had on June 4, 1915, the court overruled the objections and approved the account. From this order, the petitioners have appealed.

Before taking up the various contentions made by counsel, we remark generally that the administration of this estate has not been conducted with that degree of dispatch and attention to the rights of the petitioners which the law contemplates. The respondent has been somewhat hampered and delayed by litigation, but, so far as this record discloses, it has not been so extensive nor of such a character as to cause a delay of nearly five years, leaving the creditors of the estate without satisfaction of their claims. In all cases a reasonable time—the extent of it depending upon the particular circumstances—is necessary to enable the person charged with the duty of winding up the affairs of an estate to collect the assets and to get them into condition for distribution or convert them into cash in order to realize funds necessary to meet the demands of creditors. It [1] is the policy of the law, however, that the proceedings be conducted with dispatch, to the end that the estate shall not be wasted by needless expense incident to delay and the continuation of allowances made to the widow. Creditors, if any, are entitled to prompt satisfaction of their claims, and those entitled to the residue to have distribution made of them. (*In re Tuohy's Estate,* 33 Mont. 230, 83 Pac. 486; *State ex rel. Mannix* v. *District Court,* 51 Mont. 310, 152 Pac. 753.)

After an examination of the record, we think that the order of the district court should be set aside, and that the respondent should be required to account for property disposed of without authority of law, for assets in the way of rents and profits of real estate in her possession which have apparently been lost through her neglect or want of attention, and to furnish information in detail as to the condition of the estate. We think,

too, that she should be expedited in bringing the affairs of the estate to a close, or, as the only alternative, that some suitable person be substituted in her place who has capacity and dis-. position to do so.

1. Upon the death of the decedent the estate was ostensibly solvent. As we shall presently see, owing to the loss of the rents and profits of the real estate for which the respondent has failed to account, the accumulations of interest upon established claims, and the expenses already incurred and hereafter necessary, it is now questionable whether, after other allowances which the respondent will in any event be entitled to as the surviving widow, the assets will be sufficient to satisfy the claims of the creditors.

By her inventory returned on February 18, 1911, there appears to have come into the hands of the respondent, with the other property, forty-five head of mixed cattle and seven work horses, valued at $1,225. In her third annual exhibit dated July 17, 1913, she accounted for forty-six head of cattle of an estimated value of $1,500, and four head of horses valued at $250. On October 14, 1913, she made application to the court for an order authorizing her to sell at public auction or at private sale, for cash, all the property belonging to the estate. This application recited that the above-mentioned property was still in her hands. By subsequent orders from time to time the original order was amended by extending the time within which the [2] sale might be made until November 2, 1914. Under this order sales of real estate were made which will be noticed later, but of no other property. In her report she makes account of her disposition of the cattle as follows: "One Gene McCarthy was a creditor of the estate in excess of the value of the cattle mentioned in the inventory filed herein, and she, the executrix, turned over to him the said cattle in satisfaction of said claim with the approval of the court." In her testimony at the hearing she stated that McCarthy was her nephew and in her employment, and that she had sold to him both the cattle and the horses for the purpose of discharging his claim for services rendered

in keeping her accounts. There is nothing in the record showing that McCarthy had a claim against the deceased at the time of his death, nor any substantial showing that he had rendered services to the respondent of any value. Nor is it disclosed that the court had granted the respondent authority to make disposition of the property otherwise than by sale for cash under the order of sale. When this became apparent from the testimony of the respondent herself under the questioning of counsel for the creditors, she undertook to justify her course, so far as the cattle were concerned, by claiming that they had never been the property of the estate, but had belonged to herself, and this, too, in face of the fact that she had repeatedly in her inventory, her several accounts, and in her application for the order of sale charged herself with them as property of the estate. She did not undertake to explain or justify her disposition of the horses otherwise than as heretofore stated. Upon this showing these items should have been disapproved, and the respondent charged with the property as part of the assets of the estate, on the ground that her disposition of it had been made without authority. Even though the services had been rendered, it was nevertheless the duty of respondent to submit the liability incurred for them to the court for allowance and pay it in the manner directed by the court, viz., by the sale of property for cash.

2. The evidence discloses that the respondent had been in possession of the following real estate which had belonged to her husband: The Ward ranch, consisting of 240 acres, valued at $6,000; the Lansing ranch, consisting of 1,100 acres, valued at $11,000; the Little home ranch, consisting of 320 acres, valued at $8,000; the Little River ranch, consisting of 400 acres, valued at $14,000; the Reed ranch, consisting of 852 acres, valued at $43,000; and the Morse ranch, consisting of 680 acres, valued at $9,600. Objection was made to the approval of the account on the ground that the respondent had failed to charge herself with revenues derived or properly derivable from this property, specifically the Reed and Lansing ranches.

An executor or administrator must take into his possession [3] all the estate of his decedent, real and personal, and collect all debts due to the estate. (Rev. Codes, sec. 7603.) He is "chargeable in his account with the whole of the estate of the decedent which may come into his possession, at the value of the appraisement contained in the inventory, except as provided in the following sections, and with all the interest, profit and income of the estate." (Sec. 7628.) The following sections in the Chapter (secs. 7629-7633) relieve him from liability for losses to the estate occurring without his fault, and prescribe the measure of his expenses and the compensation which he may have for his services. Under the rule declared in section 7628, the executor or administrator is chargeable, not only with the assets which actually come into his hands, but also with those which by reason of his negligence he has failed to get into his hands. (*Wheeler* v. *Bolton*, 92 Cal. 159, 28 Pac. 558; *Estate of Kennedy*, 120 Cal. 458, 52 Pac. 820.) Since under section 7603 he is entitled to the possession of the real estate of his decedent for the purposes of administration, the same rule must apply with reference to the rents and profits which in the exercise of ordinary care and diligence ought to be received from it. So if he has occupied it himself, or by his negligence has failed to secure from it such reasonable amount of revenues in the way of rents and profits as it ought to yield, he must be charged with their loss. (*In re Alfstad's Estate*, 27 Wash. 175, 67 Pac. 593.) [4] The burden, however, is upon the heir or creditor seeking to charge him with loss due to negligence, because, though the estate has apparently suffered loss, there is no presumption that he has been guilty of the fault causing the loss. (*Wheeler* v. *Bolton, supra.*)

Applying these rules to the facts in the case in hand, is the respondent executrix properly chargeable with the rents of the Reed and Lansing ranches? At the time of the death of decedent the Reed ranch was in possession of one Reed under some sort of an agreement the nature of which does not appear. In any event the respondent did not gain possession of it until the

early part of September, 1913. The value of the crops on it at that time, harvested in part and turned over to her, was $6,000. It does not appear what became of these crops, except that the respondent charged herself in her account with $275, the value of hay and grain sold by her. This she claimed she had paid to a bank in Boulder, in Jefferson county, without, however, giving any explanation why this disposition had been made of it or exhibiting a voucher showing that it had in fact been paid. In her petition for the order of sale she stated that the crops were worth $2,000. Reed testified that the reasonable rental value of the ranch was $1,500 per annum. The witness Rorvig testified that he offered the respondent $1,100 rental for about 300 acres of this ranch for the year 1914, but that she refused it. The foregoing evidence is not disputed. There is also undisputed evidence that from the time the executrix took possession up to the time the account was filed this ranch had been in possession of Gene McCarthy, and had been used by him for the pasturage of sheep. With reference to the ownership of the sheep, the evidence leaves it in doubt whether they belonged to McCarthy or to him and the respondent jointly. Be this as it may, a *prima facie* case is made which, in the absence of explanation, is sufficient to justify a charge against the respondent for the crops for the year 1913 and for the reasonable rental value of the ranch thereafter; and this whether the sheep belonged to her and McCarthy or to him exclusively.

The Lansing ranch had been in substantially the same condition. It passed into the hands of the respondent at the date of her appointment. At that time the fences were in good repair, and the land had a rental value of $300 or $400 per annum. During the year 1914 it was being used by McCarthy in connection with the Reed ranch, for the pasturage of the sheep referred to above.

Throughout the hearing the respondent exhibited an indisposition to make any disclosures touching the condition or use made of these or any of the lands belonging to the estate, and made no other than such as were forced from her under the pressure

of cross-examination by counsel. As to the Reed and Lansing lands, it is clear that respondent has been using them as her own and appropriating the rents and profits derived from them to her own benefit. As to the other lands, there is little tangible evidence showing what use, if any, has been made of them. The record shows that little, if any, revenues have been derived from them—a condition of affairs hardly conceivable when we consider their extent and value. The court should have required a full accounting in this behalf and charged the respondent accordingly.

3. At his death the decedent had become indebted to the American National Bank at Helena to an amount approximately $30,000, and had deposited with it, as collateral, securities valued in respondent's inventory at $34,777.94. The evidence discloses that these securities consisted of promissory notes made by various persons to the decedent, and a contract for the sale by the decedent of certain mining property to one Gruell, which called for a payment by the latter of $20,000. The bank did not present a claim against the estate. The indebtedness due it had at the time respondent filed her account been discharged by payments made by the makers of some of the notes and to the amount of about $10,000, and a payment by Gruell of the amount due on the contract. The unpaid notes were thereupon delivered to the respondent. No mention of the contract had been made in the inventory. In her testimony at the hearing respondent for the first time disclosed that the bank held this security. Her report contains this statement: "The debt to the said bank has been fully paid and the said collaterals returned to the executrix, who holds them as assets of the estate." This is all the [5] information furnished. Objection was made to the approval of the account by counsel, on the ground that it did not comply with the requirements of the order which directed a full disclosure of the condition of the estate, specifically with reference to the securities mentioned in the inventory. With this contention we agree. In order that the court might determine whether the respondent had exercised diligence in collecting these

notes, whether they are of value, and therefore whether the estate is insolvent and should be administered as such by stopping the respondent's allowance theretofore made and still continued, it was important that a full disclosure should be made as to the condition of the securities and whether they are substantial assets to which the creditors could look for the satisfaction of their claims. If these securities are worth their face value and the respondent is found properly chargeable with a substantial sum in the way of rents and profits, the estate is apparently solvent; otherwise it is not. Such information as was given by the respondent was too indefinite to furnish the basis for any intelligent conclusion as to the real condition of the estate.

4. Though, as we have already said, the estate was at the outset apparently solvent and amply sufficient to satisfy the claims of the creditors, upon the disclosures made by the report and the testimony of the executrix, no definite conclusion can be reached as to what the actual condition is in this regard. Upon this condition of the record we do not think we ought, on this appeal, to venture to determine it. Except so far as the fact of insolvency will control the district court in continuing respondent's extra allowance which she claims in her account, and in permitting her to retain control of the administration, the inquiry is immaterial. Since the order must be reversed in any event, we refer the inquiry on this subject to the district court upon a full disclosure by the respondent.

5. In the inventory certain farm implements which came into the hands of the respondent were valued at $135. These assets, and also the horses heretofore referred to, are stated by the respondent in her report and in her testimony to be of no value. From the testimony of the witness Davidson it appears without dispute that the farm implements had been used by the respondent in cultivating a part of the lands belonging to the estate. Since they were admittedly assets of the estate and were included in the inventory, she ought to have been charged with their value. (Rev. Codes, sec. 7628.) The disposition made of the horses has

been shown in the former part of this opinion. The respondent is upon her own testimony chargeable with their value.

6. It appears that at the time of his death the deceased was the owner, upon the record of deeds in Broadwater county, of 560 acres of land in addition to that mentioned in the inventory, known as the Runnimede ranch. This was returned in the inventory at the value of $5,000, with a notation that it was claimed by the respondent as her own. With reference to this the report states: "That W. B. Dolenty during his lifetime was the owner of the so-called Runnimede ranch, consisting of 560 acres, appraised at $5,000. The said W. B. Dolenty was indebted to his wife, the executrix, in the sum of $5,000, evidenced by his promissory note. That in consideration of said indebtedness W. B. Dolenty executed and delivered some time in June, 1904, a deed to said property to Isabel Dolenty, his wife, which deed was never recorded and is lost. Isabel Dolenty has been in the open, notorious possession of said property for over ten years last past," etc. In his order approving the report, the district judge properly refused to charge the respondent with this as an asset of the estate, and thus to determine the ownership of the title. [6] A district court sitting in probate has only the special and limited powers conferred by statute, and has no power to hear and determine any matters other than those which come within the purview of the statute or which are implied as necessary to a complete exercise of those expressly conferred. (State ex rel. Bartlett v. Second Judicial District Court, 18 Mont. 481, 46 Pac. 259; In re Davis' Estate, 27 Mont. 490, 71 Pac. 757; In re Tuohy's Estate, supra.) Among the powers conferred by the part of the Codes relating to probate proceedings (Part III, Title XII, Chapter I), we do not find any provision authorizing the court, in connection with the settlement of estates, to determine questions of title between the estate and persons claiming adversely to it. These questions must be determined in proper proceedings instituted for that purpose. (State ex rel. Barker v. District Court, 26 Mont. 369, 68 Pac. 856; In re Tuohy's Estate, supra.)

The respondent by her claim put herself into a position in [7] which she cannot represent the estate, and thus the creditors, and at the same time assert title in herself adversely to the estate. It is suggested by counsel that this situation might be removed by the appointment of a special administrator to litigate the question of title with the respondent. This, however, cannot be done, because the estate is an entirety, and there can be but a single administration of its affairs. (*Murphy* v. *Nett,* 51 Mont. 82, L. R. A. 1915E, 797, 149 Pac. 713.) Moreover, the powers of a special administrator are limited to the preservation and protection of the estate temporarily, until a general administrator or an executor has been appointed. (Rev. Codes, sec. 7474.) Conceding, therefore, that one may be appointed upon removal of an executor, until a general administrator can be appointed in his stead, this cannot be done until the executor has been removed. The only remedy for the situation thus brought about is to remove the respondent and substitute a successor for her who may bring such action as may be necessary to determine the title. Since the respondent, however, is the sole beneficiary under the will, this would be wholly unnecessary, unless it should appear that the estate has become insolvent, in which event only could the creditors have any interest in it.

7. Certain sales of real estate were made in 1914, ostensibly [8] under the order of October 14, 1913, to E. A. Kimpton and Laura T. Galen. The facts in relation to them are recited in *State ex rel. Mannix* v. *District Court,* 51 Mont. 310, 152 Pac. 753. It was there held that they were void for the reasons stated. The property which was the subject of them is therefor still the property of the estate, and the respondent is chargeable with it. In its approval of the account the district court treated these sales as valid, allowing the respondent to charge herself with the proceeds only. This was error.

8. Finally, it is urged that it was the manifest duty of the court to revoke the letters of respondent and appoint someone else in her stead, for the reasons that it was disclosed: (1) That more than five years had elapsed since her appointment, with no

apparent intention on her part to close the estate; (2) that because of her delay in bringing its affairs to a close the estate had become insolvent; (3) that she had been guilty of squandering and misapplying the assets; (4) that she had disposed of property belonging to the estate without lawful authority; and (5) that she had failed to account for property coming into her hands, as well as the rents and profits derivable from it, with studied effort to use it for her own benefit. *Prima facie* these charges are sustained by the foregoing recitals. There is apparent no justification for the delay in closing the estate and the disregard of the rights of the creditors. The respondent seems to have been proceeding upon the assumption that, inasmuch as she is the sole beneficiary under the will, she is entitled to use and enjoy the estate as her own and to discharge the claims of the creditors' whenever it may suit her convenience.

The order is reversed and the proceeding is remanded to the district court, with directions to require the respondent to make a full and complete accounting, giving in detail the present condition and value of all of the assets of the estate; to charge her with such as she has disposed of without authority or order of court, as well as such as she has failed to receive by her want of diligence, including the reasonable value of the use of all the lands in her possession; to ascertain whether by reason of her delay and inattention, or for any other reason, the estate has become insolvent, and, if so, to remove her and appoint someone in her stead who can have the title to the Runnimede ranch determined; and, in any event, to compel the speedy closing up of the affairs of the estate by the sale of its property and the payment of the claims of the creditors.

*Reversed and remanded.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.

## ON MOTION FOR REHEARING.

The directions addressed to the district court in the opinion hereto delivered in disposing of the appeal herein contain

[9]  the following: "To ascertain whether by reason of her [the executrix's] delay and inattention, or for any other reason, the estate has become insolvent, and, if so, to remove her and appoint someone in her stead who can have the title to the Runnimede ranch determined." In his petition for rehearing counsel for the executrix insists that in making this direction the court overlooked the recent decisions in the cases of *In re Blackburn's Estate,* 48 Mont. 179, 137 Pac. 381, and *State ex rel. Cotter* v. *District Court,* 49 Mont. 146, 140 Pac. 732. These decisions are not referred to in the opinion, but they were not overlooked, nor is anything said during the discussion of this case even remotely inconsistent with anything said in either of them. In the first we said: "It is, however, the policy of our law that the widow shall control *in limine* the administration of her late husband's estate. (*Shiels' Estate,* 120 Cal. 347, 52 Pac. 808; *Dorris' Estate,* 93 Cal. 611, 29 Pac. 244.) To that end she is authorized to either administer it herself, or to nominate some person in whom she places trust and confidence to administer it for her. (*In re Watson's Estate,* 31 Mont. 438, 78 Pac. 702.) No condition or limitation is imposed upon her choice save that she or the person she nominates be competent; nor does the fact that she asserts claim to property which the other heirs contend belongs to the estate render her or her nominee incompetent. (Rev. Codes, sec. 7436; *Rice* v. *Tilton,* 13 Wyo. 420, 80 Pac. 828; *Brundage's Estate,* 141 Cal. 538, 75 Pac. 175; *Estate of Banquier,* 88 Cal. 302, 26 Pac. 178, 532.)" This is entirely in accord with the express declaration found in section 7432 of the Revised Codes. Under this section the surviving wife or husband has the exclusive right to the appointment in the first instance because it is therein so declared, provided he or she is a competent person within the requirements of section 7436. Furthermore, the person so entitled may request some other competent person to be appointed, if he or she does not desire to act. The principal controversy in the case arose upon the question whether, after the wife had exercised the right to have substitution made, the appointment of

the substitute was revocable at the request of the wife when supported by proof that she had been induced by unfair means to consent to the substitution. It was held that upon a proper showing, revocation may be had and the wife be permitted to take the appointment, but that otherwise the waiver of the right is irrevocable. In the second case was involved the question whether the surviving husband was entitled, as against the father of the deceased wife, to be appointed special administrator of her estate pending a contest of the validity of her will. It was held that the right of the husband was exclusive under section 7472 of the Revised Codes, because it is therein provided that in making such appointment preference must be given in the order stated in section 7432. It was there said: "The surviving husband or wife is entitled to general letters of administration, to the exclusion of any other person (Rev. Codes, sec. 7432), unless at least one of the grounds of incompetency enumerated in section 7436 is shown. In selecting a person to act as special administrator, the court or judge is expressly required to give preference to the person who is entitled to letters testamentary or of administration."

Both of these cases refer to the restrictions put upon the power of the court in making the appointment *in limine*. They do not justify the conclusion, even remotely, that this court intended to imply, by anything said in either of them, that such an administrator or executor may with immunity adopt a course of conduct which is not only wasteful of the estate, but is wholly disregardful of the rights of its creditors. This would have been to nullify the power vested in the court by sections 7488 and 7489: To call to strict account and suspend and, if necessary, to remove an administrator or executor who has been guilty of any of the delinquencies therein mentioned. It would be a monstrous doctrine to say that after his appointment the administrator may despoil or waste the estate at his pleasure, leaving those entitled to it without the means of redress. Even without the provisions in these sections, it would seem to us that the power vested in the district court to conduct the ad-

ministration of estates implies also the power to compel the trusted appointee to collect and preserve the assets of the estate put in his charge and to effect a speedy distribution of them to those entitled to share in them. True, insolvency of the estate is not a ground for the refusal of the appointment to the surviving spouse; nor is the fact that it has become insolvent subsequent to the appointment a ground for his or her removal. It is equally true, however, that the sections of the statute *supra* authorizing removal make no distinction between the surviving spouse and any other person whose appointment was properly made in the first place. These sections are aimed at any person who has shown himslf incompetent and untrustworthy.

In the original opinion it was pointed out that it is wholly immaterial what claim is made by the executrix to the Runnimede ranch, unless it should be shown on another hearing that the estate is insolvent, and the question must be determined whether it belongs to the estate. It was further pointed out, that, in case this exigency should be shown to exist, a removal of the executrix would be necessary in order that the question of ownership may be determined. It is now insisted that, instead of removing the executrix, the court should appoint a special administrator to bring appropriate action against the executrix. This subject was considered fully in the original opinion. The conclusion there stated is justified on the ground that the administration is an entirety, and there can in the nature of things be but one. It may be justified upon the further ground that jurisdiction in probate is statutory and limited, and authority for what is done by a court in the exercise of it must be directly granted by the statute conferring it, or by necessary implication, and no authority to create a double or divided administration is to be found in the statutes. However this may be, we are not disposed to recede from the conclusion heretofore announced. Certainly the executrix was not rendered incompetent to receive the appointment *in limine* because she asserted claim to property ostensibly belonging to

the estate (*In re Blackburn's Estate, supra*); but when the exigencies which have arisen since her appointment have put her in a position so antagonistic to the creditors that she cannot do justice to them and the estate, and at the same time establish her right, she ought to be relieved from her position and some fit person put in her place. She cannot bring an action against herself. (*Phillips* v. *Phillips*, 18 Mont. 305, 45 Pac. 221.) Hence the creditors cannot obtain relief.

As to the suggestion that the executrix cannot be deprived [10] of the right to nominate her successor, it may be said that *in limine* she had the right to the appointment, or, as an alternative, to nominate someone to serve in her stead. Having chosen to take the appointment, the right to nominate another was waived. In the case of *In re Blackburn's Estate, supra,* it was held that, the right to the appointment having been deliberately waived by the wife, the renunciation becomes irrevocable. By parity of reasoning it would seem that, when the wife or husband has chosen to take the appointment, it cannot thereafter be renounced and nomination be made instead. But, conceding this to be permissible when the renunciation is voluntary, in case of removal for misconduct or because of an assertion of rights adverse to the estate, the acting husband or wife ought not to be allowed to name a successor, for the reason that the person selected would more than likely be biased in favor of the adverse claim.

*Rehearing denied.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.