324 P.2d 403 (1958)
In re VINCENT'S ESTATE.
Petition for Order Declaring Termination of Life Estate Formerly Existing in Thomas H. Vincent, now deceased.
Lorena A. DENKE, Petitioner and Appellant,
v.
Paul R. WYLIE, as the Executor of the Last Will and Testament of Thomas H. Vincent, Deceased, Objector and Respondent.
No. 9719.
Supreme Court of Montana.
Submitted January 27, 1958.
Decided April 10, 1958.
Rehearing denied May 5, 1958.
Lyman H. Bennett, Virginia City, for appellant.
Frank E. Blair, Virginia City, Ralph J. Anderson, Stanley P. Sorenson, Helena, for respondent. Ralph J. Anderson argued orally.
LESTER H. LOBLE, District Judge, sitting in place of BOTTOMLY, Justice.
On August 19, 1916, J.A. McAllister and Annie McAllister, as parties of the first part, made, executed and delivered to Thomas H. Vincent and Lora M. Vincent, his wife, as parties of the second part, a certain warranty deed in usual printed form covering certain real property in Madison County, Montana. Incorporated in typewriting therein were these words:
"The parties of the second part agree not to sell the above-mentioned land or dispose of it except to the parties of the first part or their heirs."
Lora M. Vincent died on May 9, 1948, and upon her death Thomas H. Vincent, her husband, succeeded to all right, title, claim and interest whatsoever that she had in said property at the time of her death.
*404 Thomas H. Vincent died testate on March 13, 1955. Paul R. Wylie at the time of this proceeding had become the executor of the last will and testament of Thomas H. Vincent, deceased, and in the instant proceeding he filed objections to the petition hereinafter referred to and also filed an answer and counterclaim.
On October 14, 1955, there was filed with the clerk of the court in Madison County, Montana, a certain petition, No. 1893, entitled:
"Petition for Order Declaring Termination of Life Estate 
"To the Honorable the District Court of the Fifth Judicial District of the State of Montana, in and for the County of Madison:
"Comes now Lorena A. Denke and respectfully represents to the above-entitled Court:
"1. That in his lifetime, the above-named Thomas H. Vincent was the owner of a life estate in a certain tract of land situate, lying and being in * * * Madison County, Montana, * * *
"2. That said Thomas H. Vincent died on or about the 13th day of March, 1955, and that upon his death all interest he had theretofore had in said property terminated, and the title to said property in fee simple vested in your Petitioner and that she is now the owner in fee simple of said described property and is entitled to the possession thereof.
"3. That said Thomas H. Vincent died testate and that pursuant to an Order by the above-entitled Court duly and regularly made and entered in the office of the Clerk of the above-entitled Court, Paul R. Wylie was appointed Executor of the Last Will and Testament of said Thomas H. Vincent, deceased, that he thereafter qualified as such Executor and is now the duly and regularly appointed, qualified and acting Executor of the Last Will and Testament of Thomas H. Vincent, deceased.
"4. That said Paul R. Wylie is a nephew and heir-at-law of said Thomas H. Vincent, deceased and that Maurice McDowell, Harold McDowell, William Hughes, Flora Gorham, Frances W. Travis, Robert H. Wylie, Sadie Woodman, Marjorie Hughes Cowan and Deane Belle Cowan are heirs-at-law of said decedent and devisees under and pursuant to the Last Will and Testament of said decedent and each of them may claim an interest therein in their respective capacities as personal representative, heirs and devisees of said decedent and that they are the only persons known to Petitioner who might make any such claim.
"Wherefore, Petitioner prays for an Order declaring the former existence of the life estate of Thomas H. Vincent and the termination thereof and the vesting of the fee simple title in the property described in the foregoing Petition in your Petitioner." Emphasis supplied.
None of the heirs named in the petition above-mentioned appeared.
The petition does not disclose the identity of Lorena A. Denke, or her source of interest in the subject matter of the litigation. By this petition, pursuant to the provisions of section 91-4321, R.C.M. 1947, Lorena A. Denke sought to have determined that Thomas H. Vincent's interest in the property conveyed by said deed was a life estate, and that having died it should be terminated, but further praying that fee simple title in the property be vested in Lorena A. Denke, the petitioner.
It was to this petition that Paul R. Wylie, executor of the last will and testament, filed his objections, counterclaim, and cross-complaint, wherein he denied that the interest of Thomas H. Vincent in the property was a life estate, but was fee simple absolute. He denied that the title of said property ever at any time vested in the petitioner, Lorena A. Denke; he set up allegations to quiet title, prayed that Lorena A. Denke be required to set forth the nature of her claim and that all of her adverse claims be determined by the court; that it be decreed that the said Lorena A. Denke had no right, title, estate or interest in the property; that he be decreed entitled to the possession thereof as such executor; and that Lorena A. Denke be forever enjoined *405 from asserting any claim to said premises adverse to the estate of Thomas H. Vincent, deceased.
An answer to the counterclaim and cross-complaint was filed denying all allegations thereof, and alleging that since the death of Thomas H. Vincent the petitioner, Lorena A. Denke, has been the owner in fee simple of the property in controversy.
It was stipulated that a photostatic copy of the deed, in question, dated August 16, 1916, would be filed in the supreme court. This was not done, but it is stipulated that said deed was a printed form of warranty deed, and that the words, "The parties of the second part agree not to sell the above-mentioned land or dispose of it except to the parties of the first part or their heirs.", were typewritten and added to said deed prior to the execution and delivery thereof.
From the record it may be gleaned Lorena A. Denke was formerly Lorena A. McAllister, a daughter of J.A. McAllister. He, as a widower, on March 1, 1938, deeded the property to her. Though the validity of this deed was not put in issue by the pleadings, nor could it be in this type of proceeding, the court in its judgment decreed it void and ineffective. Such action by the court would have to be after institution of proper proceedings in a forum other than the probate court. It will be borne in mind that J.A. McAllister and wife, Annie McAllister, had on August 19, 1916, deeded this property to Thomas H. Vincent and Lora Vincent, his wife, by warranty deed, which contained the typewritten words above referred to.
On March 30, 1956, after trial the court below made certain findings of fact and conclusions of law and entered judgment as follows:
"That the petition of Lorena A. Denke for termination of life estate be and the same is hereby dismissed upon the merits.
"That at the time of his death on March 15 [sic], 1955, Thomas H. Vincent was the owner in fee simple of all of the property described in the pleadings on file in this action and particularly described in the petition and in the answer and counterclaim of Paul R. Wylie as the executor of the last will and testament of Thomas H. Vincent, deceased, as well as in the findings of fact hereinbefore made and filed on March 23, 1956.
"That Lorena A. Denke as the petitioner herein or otherwise has no right, title, estate or interest whatsoever in or to the lands and premises and property above mentioned and described and that the respondent, Paul R. Wylie, as the executor of the last will and testament of said Thomas H. Vincent, deceased, is entitled to the possession of said land and premises and to dispose of the same in the probate of the estate of Thomas H. Vincent, deceased.
"That the gift deed made by J.A. McAllister, a widower, on the first day of March, 1938, in favor of Lorena A. McAllister, now the petitioner herein, filed for record in the office of the County Clerk and Recorder in and for the County of Madison, State of Montana, the twentieth day of April, 1938, at 4:15 o'clock P.M. of said day and which was thereafter recorded in Book 131 of Deeds at page 252 of the records of said office is void and ineffective for any purpose.
"That the said Lorena A. Denke, her heirs, assigns, personal representatives, agents and employees be and they are hereby forever enjoined and debarred from asserting any right, title, estate, claim or interest whatsoever in or to the said lands and premises adverse to the estate of Thomas H. Vincent, deceased, Paul R. Wylie as the executor of the last will and testament of said deceased and the devisees named and described in the said last will and testament of said Thomas H. Vincent, now in probate in the above styled District Court, their heirs and assigns.
"That the real property affected by this decree is situated in the County of Madison, State of Montana * * *
"That said real estate is more specifically described and identified in a certain indenture made the nineteenth day of August in the year of our Lord, one thousand nine *406 hundred and sixteen, wherein J.A. McAllister and Annie McAllister, of McAllister, Montana, were parties of the first part and T.H. Vincent and Laura [sic] M. Vincent were parties of the second part, which said instrument was filed for record in the office of the County Clerk and Recorder of said Madison County, State of Montana, on October 28, 1916, at 9:15 o'clock A.M. of said day and thereafter recorded in Book 94 of Deeds at page 88 of the records of said office."
There are a number of specifications of error, but all resolve themselves into two questions:

The Issues.
I. Did the court have jurisdiction in a proceeding under the termination of a life estate statute (section 91-4321) to decree (a) that Thomas H. Vincent became the owner of a fee simple title in said property under said deed; (b) that title be quieted and Lorena A. Denke be decreed to have no right, title, estate or interest in said property and be forever enjoined and debarred from asserting any right thereto; (c) that a gift deed from J.A. McAllister, a widower, dated March 1, 1938, in favor of Lorena A. McAllister, now Lorena A. Denke, be held void and ineffective for any purpose; and
II. Did the typewritten words in said deed, dated August 19, 1916, from J.A. McAllister and Annie McAllister, his wife, to Thomas H. Vincent and Lora M. Vincent, his wife, to wit: "The parties of the second part agree not to sell the above-mentioned land or dispose of it except to the parties of the first part or their heirs.", create a life estate in the grantees?
The Statute (R.C.M. 1947, § 91-4321).
The petition was filed under section 91-4321, R.C.M. 1947, which is a part of Miscellaneous Probate Proceedings, and is clearly a special proceeding in probate. It reads in part as follows:
"(1) When the death of a person terminates a life estate or affects a joint tenancy any person interested in the property or in the title thereto, in which such life estate was held, or such joint tenancy existed, may file in the district court of the county in which the property, or some part thereof, is situated, his verified petition, setting forth such facts and particularly describing the property and his interests therein, and naming all persons who claim or might claim an interest therein as personal representative, heir, devisee or legatee of the decedent, so far as known to the petitioner. * * *
"(3) The court or the judge shall hear such petition, and the evidence offered in support thereof, and if, upon such hearing, it shall appear that such life estate of such deceased person absolutely terminated by reason of his death, or that such joint tenancy was affected by the death of such deceased person, the court or judge shall make an order to that effect, and thereupon a certified copy of such order may be recorded in the office of the county clerk of each county in which any part of the property is situated, and thereafter shall have the same effect as a final order of distribution so recorded." Emphasis supplied.
This statute is, so far as applicable, the same as section 1723 of the California Code of Civ. Procedure, prior to its amendment in 1921. The California amendment in 1921 was as follows: "The court shall take evidence in support of the petition and of any issues raised, and may render judgment thereon establishing such termination of estate or investiture of title and determining to whom the property belongs by reason thereof." Cal. Code Civ. Proc. (2d ed. 1920), § 1723, pp. 3297-98. The Montana statute does not have this amendment.
Thus, most pronouncements in California after 1921 are of no value. The construction of this California section prior to 1921 by its courts are persuasive.
"At the hearing the court may render judgment establishing the termination of the estate. But the court may not, or, at least under the former provisions, might not, declare in whom the title was vested absolutely. 16 Cal. Jur., Life Estates, § 13, pp. 376-77.
*407 "The Probate Code contains express provisions for establishment of the fact of death. But though these provisions give the probate court power to decree the termination of a life estate, the court is not authorized to declare in whom the estate vests on such termination." 31 Cal. Jur.2d, Life Estates, § 15, pp. 327-28.
The leading cases in California are as follows:
Matter of Tracey, 136 Cal. 385, 69 P. 20, 22, wherein it is said: "While this is not an appeal from the decree, we think it proper to remark that the court is not given power under the section to declare in whom, upon termination of title, a life estate is vested absolutely. It is empowered to make a decree that the life estate of a deceased person has absolutely terminated."
In Hansen v. Union Savings Bank, 148 Cal. 157, 160, 82 Pac. 768, 769, it is said: "Moreover, this section 1723 is, in our opinion, only intended as a proceeding to have it determined that a certain person is dead upon whose death the asserted right of another person depends, and not to have the validity of the right conclusively adjudicated. The decree in the proceeding merely determines that, if the party petitioning has any asserted right or title accruing on the death of another person, such asserted right or title has accrued." Citing Matter of Tracey, supra.
In King v. Pauly, 159 Cal. 549, 554, 556, 115 P. 210, 211, Ann. Cas. 1912C, 1244, the court said "that the proceeding provided by section 1723, Code of Civil Procedure, was only intended as a proceeding to have it determined that a certain person is dead, upon whose death the asserted right of another person depends, and not one to have the validity of the right conclusively adjudicated. * * *
"It is not to be supposed that the Legislature contemplated that a conclusive adjudication as to these alleged facts might be made against those claiming under the wife without such notice to them and opportunity to defend as would comply with the requirements of our federal and state Constitutions as to due process of law. * * * In the light of these statutory requirements as to ordinary actions, it appears almost incredible that the Legislature could have contemplated that a proceeding which in its whole effect and scope would be nothing less than an ordinary action to quiet title could be had and conclusively determined upon such notice to those interested in the property as is authorized by the section. It is much more reasonable to conclude that it merely contemplated a proceeding having for its object, as said in the Hansen case, the establishment of some record evidence `of the death of a life tenant, a homestead claimant, or other person upon whose death some right or estate vests'."
To the same effect see McPike v. Mehrmann, 18 Cal. App. 501, 123 P. 549, citing King v. Pauly, supra; United States v. Pierotti, 9 Cir.1946, 154 F.2d 758; In re Estate of Basso, 68 Cal. App.2d 294, 156 P.2d 476.
In Montana our court has often announced the same doctrine as in California.
In In re Spriggs' Estate, 68 Mont. 92, 94, 216 P. 1108, the court stated:
"In State ex rel. Kelly v. Second Judicial District Court, 25 Mont. 33, 63 P. 717, the court said: `The district court's power when sitting in probate matters is derived from the statute, and it cannot go beyond the provisions of the statute'."
In In re Stinger's Estate, 61 Mont. 173, 189, 201 P. 693, 698, the court, after a clear discussion of the rule of jurisdiction in probate matters, said:
"In In re Dolenty's Estate, 53 Mont. 33, 161 P. 524, it was held that the probate court did not have jurisdiction to determine the question of title as to real estate between the estate and the widow of the deceased claiming the real estate adversely."
Other cases on the jurisdiction of the probate court are: Thelen v. Vogel, 86 Mont. 33, 281 P. 753; In re Davis' Estate, 27 Mont. 490, 71 P. 757; Philbrick v. American Bank & Trust Co., 58 Mont. 376, 193 P. 59, is authority for the principle *408 that where jurisdiction is conferred on the probate court resort must be had to that court and not elsewhere; In re Bank's Estate, 80 Mont. 159, 260 P. 128; Bullerdick v. Hermsmeyer, 32 Mont. 541, 81 P. 334; Burns v. Smith, 21 Mont. 251, 53 P. 742, 69 Am. St. Rep. 653; State ex rel. Kelly v. Second Judicial District Court, 25 Mont. 33, 63 P. 717; In re Graff's Estate, 119 Mont. 311, 174 P.2d 216; In re Day's Estate, 119 Mont. 547, 177 P.2d 862; 4 Bancroft's Code Practice and Remedies, § 2909, p. 3739.
In State ex rel. Reid v. District Court, 126 Mont. 586, 591, 256 P.2d 546, 549, the court held that "The administration of an estate of a deceased person is neither an action at law nor a suit in equity but it is a special proceeding." See Chadwick v. Chadwick, 6 Mont. 566, 579, 13 P. 385.
In State ex rel. Bartlett v. Second Judicial District Court, 18 Mont. 481, 484, 46 P. 259, 260, the court stated: "It has been established by the decisions of this court that the jurisdiction of the district court, sitting in probate matters, is limited to the powers conferred upon it by statute * * *."
The court, in State ex rel. Shields v. Second Judicial District Court, 24 Mont. 1, 13, 60 P. 489, 493, said that "its power when sitting in probate matters is derived from the statute, and it cannot go beyond the provisions of the statute. State ex rel. Bartlett v. Second Judicial District Court, 18 Mont. 481, 46 P. 259; In re Higgins' Estate, 15 Mont. 474, 39 P. 506, 28 L.R.A. 116." To the same effect see In re Tuohy's Estate, 33 Mont. 230, 244, 83 P. 486, citing State ex rel. Shields v. Second Judicial District Court, supra; In re Dolenty's Estate, 53 Mont. 33, 43, 161 P. 524, citing State ex rel. Bartlett v. Second Judicial District Court, supra, In re Davis' Estate, supra, and In re Tuohy's Estate, supra.
The case of In re Jennings' Estate, 74 Mont. 449, 466, 241 P. 648, 654, held that "The court, sitting in probate, could not try any question of title; that question must be resolved in another forum. State ex rel. Barker v. District Court, 26 Mont. 369, 68 P. 856; In re Dolenty's Estate, supra."
In re Graff's Estate, 119 Mont. 311, 316, 174 P.2d 216, 218, quoting from In re Dolenty's Estate, supra, 53 Mont. 33, 161 P. 524, the court said: "In his order approving the report, the district judge properly refused to charge the respondent with this as an asset of the estate, and thus to determine the ownership of the title.
"A district court sitting in probate has only the special and limited powers conferred by statute, and has no power to hear and determine any matters other than those which come within the purview of the statute or which are implied as necessary to a complete exercise of those expressly conferred. (Citing cases.) * * * we do not find any provision authorizing the court, in connection with the settlement of estates to determine questions of title between the estate and persons claiming adversely to it. These questions must be determined in proper proceedings instituted for that purpose."
In a special probate proceeding under section 91-4321, supra, a statute for the termination of a life estate, the court below rendered a judgment quieting title to the real property in question. This cannot be done.
Proceedings to quiet title are set forth in sections 93-6201 to 93-6239, R.C.M. 1947. The instant proceeding in no way meets the requirements set forth. To mention but a few, there are neither parties plaintiff nor defendant, no lis pendens, no summons or service thereof. We are aware that by section 93-6239, the statutes on quiet title are cumulative and in addition to any other remedy, but no such remedy exists under section 91-4321, R.C.M. 1947, in the termination of a life estate.
Thus we hold that under the termination of a life estate statute, section 91-4321, supra, in which the statute limits the court to making an order terminating the life estate, the court had no jurisdiction to render certain parts of the judgment as *409 was done herein, nor could the parties confer jurisdiction on the court. In re Spriggs' Estate, supra.
Adverting to the second question, did the typewritten words in said deed dated August 19, 1916, to wit: "The parties of the second part agree not to sell the above-mentioned land or dispose of it except to the parties of the first part or their heirs." create a life estate? The answer is no, and the findings of fact, conclusions of law and judgment should be amended to provide that the title of the said Thomas H. Vincent, in and to said property, was not that of a life estate; that the relief prayed for in the petition be denied and the petition dismissed.

Testimony.
Over proper objection the petitioner testified as follows to a conversation with Thomas H. Vincent, who was deceased at the time of the hearing.
"A. Mr. Vincent asked me if I would give him a deed, a clear deed so he could deed it to someone else, to the property down there at the lake; he understood that my dad had deeded it to me.
"Q. That conversation, was it before or after you had caused to be recorded the deed which I have referred to in Book 131, page 252. That deed was dated March 1st, 1938. It was after that that you had this conversation? A. Oh, yes, it was, I wouldn't say exactly when it was but it was two or two and a half years ago Mr. Vincent stopped at the store.
"Q. Did you ever have any other conversations about this property and his claim of ownership thereon or thereto with Mr. Vincent?
"The Court: She can say yes or no to that.
"A. Well, I don't remember.
"Q. You don't recall any? A. No, I don't remember of any right now. I can't remember of any that I had with him."
It is not unusual for a person who owns property by deed to make the statements attributed to him after he finds another has a deed to the same property.
Mrs. Frances Fessenden, witness for the petitioner, testified as follows:
"Q. Now, Mrs. Fessenden, will you as closely as you may or are able to do so fix the time of your first conversation, the circumstances which induced it and the substance of what you and either one or the other of them said:
"Q. You have the question in mind now? A. Yes, sir.
"Q. Will you please give us your answer to the best of your recollection? A. I think it was around 1919, it was during the summer. We wanted to enlarge our house but it was on leased land and I had always been told we shouldn't do it because we couldn't have the buildings, so Uncle Tom was building a barn, Mr. Vincent was building a barn, and I went over and asked him, Do you have a deed to the place? And he said, No, only a life lease.
"Q. Did you ever have any other conversation with him or with his then wife? A. Well, once, I said to Aunt Laura [sic], Well, you folks have a lease too; and she said, No, we have a deed.
"Q. May I just make this inquiry  you came by reason of your intimate acquaintance with them to call Mr. and Mrs. Vincent, Uncle Tom and Aunty Laura [sic]? A. I forget now, I'm sorry.
"Q. There's no actual relationship? A. Oh, no, sir.
"Q. Or to the McAllisters either? A. No.
"Q. Did you ever have any other conversations with either of them, did you say? A. Well, last summer, the last summer that Mr. Vincent lived, that was a year ago, I believe, one day we were talking and he was talking about selling his place and I said, Do you have a deed, Uncle Tom? And he said, yes."
If this testimony were admissible, at best it discloses that once Thomas H. Vincent said he had a life lease, that Mrs. Vincent said they had a deed, and so did Mr. Vincent so state.
*410 A promissory note dated October 31, 1916, for $2,000 payable one day after date, signed by J.A. McAllister and payable to the order of Thomas H. Vincent, showing various payments of principal and interest up to January 28, 1932, was received in evidence.
On the $2,000 note, the indorsements are illuminating. McAllister who signed the note evidently ran a store, and Vincent was a customer. So we see Vincent from the time of the making of the note in October 31, 1916, two months after the execution of the controverted deed, to the last indorsement in 1932, indorsing credits for hay, coal, groceries and the like received by Vincent from McAllister. So too, it is of passing interest that apparently the note was never paid and is still in the possession of the Vincent estate.
Would it be likely that Vincent would accept from McAllister a life estate in unimproved land, the consideration being but $20 upon which Vincent built his home, and made extensive improvements. These old timers were quite clear in their dealings, the note well-written and the credits clear, the deed in question printed and with a typewritten insert. They were friends.
The able presiding judge, in permitting the introduction of the note, followed a well-established and proper liberal practice when trying a case without a jury, of giving the litigants an opportunity to fully develop any enlightening facts.
We seriously question, and we are sure the trial judge did, whether it was proper to admit the alleged oral statements of Thomas H. Vincent, and his wife, both deceased, in reference to the deed.
In Marcellus v. Wright, 65 Mont. 580, 594, 212 P. 299, 302, the court commenting upon the declaration of deceased persons said:
"When should a court determine to admit the testimony of the survivor against one whose `mouth is stopt with dust'? Manifestly only when it appears to the court that, in view of all the surrounding facts and circumstances, injustice will result if the testimony is excluded. While undoubtedly the power to admit and reject such testimony is reposed wisely in the sound discretion of the trial court, it cannot be too careful in exercising that discretion. Every judge has observed the freedom with which a witness testifies who knows he cannot be contradicted. Courts should scrutinize with more than usual care the quality of proof presented in such cases, and when the testimony relates to oral communications between the witness and the deceased, it must be viewed with caution. Section 10672, Rev. Codes 1921 [now R.C.M. 1947, § 93-2001-1]; Gauss v. Trump, 48 Mont. 92, 135 P. 910; Escallier v. Great Northern Ry. Co., 46 Mont. 238, 127 P. 458, Ann. Cas. 1914B, 468; McCrimmon v. Murray, 43 Mont. 457, 117 P. 73; Gray v. Grant, 62 Mont. 452, 206 P. 410. In the Escallier Case, Mr. Chief Justice Brantly, in commenting upon the declarations of deceased persons, said: `Speaking generally, this character of evidence is the weakest and least satisfactory of any in persuasive value. "With respect to all verbal admissions, it may be observed that they ought to be received with great caution. The evidence, consisting as it does in the mere repetition of oral statements, is subject to much imperfection and mistake; the party himself either being misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood him. It frequently happens, also, that the witness by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party actually did say." 1 Greenleaf on Evidence, 16th Ed., § 200. * * * Though the witness who testifies to the oral statement may be honest, his memory may be at fault, or he may have failed to comprehend and interpret the statement as it was intended to be understood by the speaker. * * * Moreover, so easy is it to fabricate such evidence that there is strong temptation to be a dishonest, interested witness to do so. * * *' And *411 see Sanger v. Huguenel [65 Mont. 236], 211 P. 349."
But if properly admitted these oral statements preponderate as much in favor of the respondent as they do the appellant. It was for the court below, having an opportunity to see the witnesses and hear the testimony and to observe their mental and physical faculties, to decide what weight should be given to their testimony. Barnard Realty Co. v. City of Butte, 55 Mont. 384, 391, 177 P. 402, citing Bordeaux v. Bordeaux, 32 Mont. 159, 80 P. 6, Finlen v. Heinze, 32 Mont. 354, 80 P. 918, Delmoe v. Long, 35 Mont. 139, 88 P. 778. Also see Dahlberg v. Lannen, 84 Mont. 68, 77, 274 P. 151, and Reynolds v. Reynolds, 132 Mont. 303, 317 P.2d 856.

The Printed Warranty Deed from the McAllisters to the Vincents Containing the Typewritten Clause.
In a proper construction of the warranty deed, and particularly the typewritten words, we must take it by its four corners. Krutzfeld v. Stevenson, 86 Mont. 463, 284 P. 553.
R.C.M. 1947, § 67-1608, provides: "A fee simple title is presumed to be intended to pass by a grant of real property, unless it appears from the grant that a lesser estate was intended."
The deed was a grant in fee simple by warranty deed to the grantees, their heirs and assigns. The nature of the instrument and its intention is a transfer in fee with a warranty of title.
In the deed the grantors make no provision for reversion to them or their heirs. None of the words usually found in creating a life estate are in the instrument. All the typewritten words mean is, that some way, somehow, at some time, the grantors or their heirs could, for an unnamed consideration, if they wanted to, acquire this property. Under appellant's theory this property was burdened with this restraint all during the lives of the Vincents and their heirs, all during the lives of the McAllisters and their heirs. According to appellant this property in Madison County lies dormant and burdened until such time as the McAllisters or their heirs beckon.
The typewritten words violate section 67-405, R.C.M. 1947, which provides: "Conditions restraining alienation, when repugnant to the interest created, are void."
In Braun v. Klug, 335 Mich. 691, 57 N.W.2d 299, 300, 36 A.L.R.2d 1434, the court said:
"This is a suit to quiet title to a parcel of land in Livingston County, Michigan. The facts are as follows: On October 11, 1947, defendants, Francis X. Klug, Sr. and Mary A. Klug, his wife, deeded a parcel of land to plaintiffs, William Braun and Ora Braun, his wife. The deed contained the following provision:
"`Grantees herein specifically covenant and agree that the above described property will not be sold to anyone except grantors herein or their heirs, representatives or assigns. It is agreed that this covenant shall run with the land'." The wording is almost identical with that in the McAllister deed, even stronger providing that the covenant shall run with the land.
The Michigan Court quoting from 18 C.J., § 336 (26 C.J.S. Deeds, § 134 b), said: "`Where an estate in fee simple is granted to a person by proper and insufficient words, a clause in the deed which is in restraint of alienation is void and will be rejected'."
Other Michigan cases are Watkins v. Minor, 214 Mich. 380, 183 N.W. 186; Sloman v. Cutler, 258 Mich. 372, 242 N.W. 735. See Porter v. Barrett, 233 Mich. 373, 206 N.W. 532, 42 A.L.R. 1267; Mandlebaum v. McDonell, 29 Mich. 78, 18 Am. Rep. 61; Smith v. Smith, 290 Mich. 143, 287 N.W. 411, 124 A.L.R. 215; and DePeyster v. Michael, 6 N.Y. (2 Selden) 467, 57 Am. Dec. 470, 474; and Palmateer v. Reid, 121 Or. 179, 185, 254 P. 359.
We see nothing in Musselshell Valley Farming & Livestock Co. v. Cooley, 86 Mont. 276, 283 P. 213, or Krutzfeld v. Stevenson, supra, cited by appellant in conflict with the views expressed herein.
*412 The clause if it were valid, which we hold it is not, does not extend its provisions to the heirs of the Vincents, but contents itself with saying "The parties of the second part agree not to sell the above-mentioned land * * *." Emphasis supplied.
But now all parties are dead, and so is the typewritten clause, for by its express provisions it extended to the Vincents and not to their assigns or heirs.
In Maynard v. Polhemus, 1887, 74 Cal. 141, 15 P. 451, the court said: "The complaint alleges that Nicholas DePeyster, in September, 1852, granted and conveyed the land in controversy to one Cooper. The deed contained the following clause: `To have and to hold the aforesaid premises unto the said John B. Cooper, his heirs, and to his and their sole use forever; with the sole provision that if the said Cooper should ever sell any of the aforesaid property, it shall be sold to the said DePeyster at the aforesaid price.'* * *
"If the proviso referred to be construed as a covenant, it was merely personal, and not binding, upon the heirs or assigns of Cooper. It does not appear that DePeyster attempted to bind the heirs of Cooper by any covenant. All claim on behalf of DePeyster and his grantees under the proviso ceased upon the death of Cooper."
This clause does not remotely meet the requirements to be met in creating a life estate, both the granting and habendum clause convey a fee simple to the grantees and their heirs and assigns. It was but a futile effort by McAllister to control the alienation.
See R.C.M. 1947, § 67-502, life estates; § 67-1515, grants interpreted as in contracts; § 67-1522, what title passes; § 67-1501, transfer defined; § 67-1608, when fee is presumed to pass. See 5 Tiffany, Real Property, § 1345, p. 166; Gray, Restraints on Alienation, § 26, p. 18.
The cause is remanded to the district court to amend the findings of fact, conclusion of law and judgment to provide that the title of Thomas and Lora M. Vincent in and to said property was not that of a life estate; that the relief prayed for in the petition be denied, the petition dismissed with prejudice, and eliminating from the findings of fact, conclusions of law and judgment the objectionable parts hereinabove referred to.
HARRISON, C. J., and CASTLES and ADAIR, JJ., concur.