## In re DAY'S ESTATE.

No. 8669

Submitted January 13, 1947. Decided February 20, 1947.

177 Pac. (2d) 862

548

Mr. D. W. Doyle of Conrad, and Mr. John J. Greene, of Cut Bank, for appellant and objectors.

Mr. E. J. McCabe, of Great Falls, and Mr. Cedar B. Aronow, of Shelby, for Douglas Parker, administrator, appellant.

Mr. Lloyd A. Murrills, of Cut Bank, for respondent.

MR. JUSTICE CHOATE delivered the opinion of the Court.

This is an appeal by Douglas Parker as administrator of the estate of Erma Day, deceased, from an order of the district court of Toole county sitting in probate granting the petition of Leon A. Murrills, respondent herein, for the conveyance to him by said administrator, of certain real property and to have a deed conveying same declared a mortgage. Robert Robinson, an heir, and Mabel Bennett, a creditor of Erma Day, also joined in the appeal. The trial court found in favor of respondent Murrills, held the deed involved to be in fact a mortgage and ordered the administrator to make conveyance of the property to petitioner upon payment of the sum of $1,141.66 and interest, the balance found to be due the estate.

The petition alleges the following essential facts upon which issue was joined by appellants: That in the year 1935, and prior thereto, petitioner Murrills was the owner of three lots of land in the city of Shelby, Montana; that on or about January 2, 1935, he executed to decedent a deed in writing to said lots, which deed was recorded with the county clerk of Toole county about twelve days later; that although this deed was on its face an absolute conveyance in fee simple with no right of redemption mentioned in it, that it was in fact intended by both petitioner and decedent that said deed was a mortgage only and should stand as security for the payment of an in-

debtedness owed by petitioner to decedent in the sum of $937.68, and that the property should be reconveyed to petitioner at any time he repaid said sum. This agreement is alleged to have been made by an exchange of letters between petitioner who then temporarily resided in Minneapolis and decedent who lived in Shelby. Petitioner was unable to produce any of said letters but after stating that he had made a search for them but could not find them, he then testified to their contents. He stated that Mrs. Day wrote him that Dr. Williamson, who owned the Shelby Drug Company, and had a mortgage on petitioner's lots in Shelby on which about $3,200 was due, had told her he was about to foreclose said mortgage unless some provision was made for paying him; that in order to help petitioner out in the emergency, Mrs. Day wrote that she wanted to make a loan to him and that she would advance the amount necessary to pay off Dr. Williamson with the understanding that at any time petitioner repaid said loan, she would reconvey the property to him. It appears without contradiction that in order to pay off the Shelby Drug Company mortgage, petitioner borrowed from the Home Owners Loan Corporation $2,765.30. This was insufficient to pay off the full amount of its mortgage, some $3,201.18 and Mrs. Day paid the balance in the amount of $927.68, this being the amount of the loan allegedly made by decedent to petitioner.

In support of petitioner's case the following testimony was also introduced upon the matter of the alleged exchange of letters between petitioner and decedent: J. W. Williamson testified to a conversation which he had with Mrs. Day in the fall of 1935, in which, referring to the contemplated foreclosure of witness' mortgage, Mrs. Day said "she was going to redeem the property or going to get a loan on it," and that she said she was "not going to have L. A. Murrills loose the property." Lloyd A. Murrills, son of petitioner, testified that he had an exchange of correspondence with Mrs. Day during the year 1935; that he had not kept the letters and could not produce them but that he had a memorandum made at the time

he received the letter on which he had copied figures contained in a letter from Mrs. Day about the amount she had received from the Home Owners Loan Company and what she paid Dr. Williamson. Testifying from said memorandum, witness said that the amount of said advances stated in said letter was $937.68. Witness then testified that in said letter Mrs. Day said that although she was taking over the property and expected to receive the deed for it, she was not taking it over for herself and all she wanted out of it was the money she was putting into it.

In support of the objector's case, the following facts are established:

1. The duration or date of payment of the alleged "mortgage" was nowhere specified other than that petitioner stated the lots in question were to be reconveyed to him "at any time" he repaid the loan of $927.68;

2. No interest or interest rate on the mortgage indebtedness was specified;

3. Insofar as the record discloses, no note for the mortgage indebtedness was given;

4. Mrs. Day was living on the premises in question at the time the alleged "mortgage" was given to her and she continued to live there for approximately eight years up to the time of her death;

5. Decedent paid the monthly installments of $21.80 on the mortgage given by Murrills to the Home Owners Loan Corporation from the date it was given to the time of her death. She also paid the taxes and special improvements on the property, as well as the fire insurance premiums on the dwelling house and garage from 1937 to 1944;

6. Mrs. Day also made extensive repairs and changes in the property during her occupancy of it. She "made a dining room out of the bed room," laid a hardwood floor, remodelled the kitchen, put wall covering on both bedroom and living room ceilings, sanded all the floors, kept up the yard and garden and set out shrubbery;

7. No payments were made on the alleged "mortgage" for seven years. Finally in the fall of 1943 and in 1944 petitioner testified that he paid Mrs. Day two payments of $150 each and one payment of $68.20, a total of $368.20. Nothing was said by Mrs. Day about any of these payments being applied on the alleged "mortgage" indebtedness and there is no showing of a mortgage to secure future advances;

8. Petitioner's case is grounded almost entirely upon oral testimony concerning the contents of a lost letter or letters which were allegedly written ten years before the date of this litigation.

*Statutes Applicable.* This action is brought under the provisions of sections 10268 to 10273, Revised Codes of Montana of 1935. Briefly summarized, so far as applicable to this case, the sections provide that the executor or administrator of a decedent who was bound by a contract in writing to convey real estate but died before making the conveyance, may be compelled by order of the court or judge to make such conveyance. Provision is made for petition and contest by interested parties. Section 10271 provides that if after a full hearing upon the petition and objections and examination of the circumstances of the claim, the court or judge is satisfied that the petitioner is entitled to a conveyance of the real estate, he shall order such conveyance to be made. Section 10273 provides that if upon such hearing the right of the petitioner to have a specific performance is found to be doubtful, the judge must dismiss the petition without prejudice and the petitioner may at any time within six months thereafter proceed by action to enforce a specific performance thereof.

*Jurisdiction of the Court.* At the outset of our consideration of this case we are met with the question as to the authority of the district court sitting in probate to entertain and pass upon respondent's petition to have a deed declared a mortgage and to be permitted to redeem the property. The relief sought by petitioner is purely equitable. Being such it can be had only in a court vested with equitable powers. Dis-

trict courts sitting in probate are without such powers except where a determination of an equitable question is a necessary incident to the carrying out of the powers expressly granted to them. In re Stinger's Estate, 61 Mont. 173, 188, 201 Pac. 693. Here the power to consider matters equitable in nature is not *incidental* to the carrying out of the powers expressly granted to district courts sitting in probate (secs. 10268 to 10278). The very heart and substance of the relief sought by respondent is the exercise of an equitable power to declare a deed a mortgage and the granting of equitable relief, namely, to have a conveyance of the property upon redemption from the mortgage. It is also well settled in this state that a district court sitting in probate cannot try questions of title or ownership of property alleged to belong to an estate. In re Tuohy's Estate, 33 Mont. 230, 244, 83 Pac. 486; In re Dolenty's Estate, 53 Mont. 33, 43, 161 Pac. 524; In re Jennings' Estate, 74 Mont. 449, 466, 241 Pac. 648; McPike v. Superior Court, 220 Cal. 254, 30 Pac. (2d) 17; In re Kelley's Estate, 132 Okl. 21, 269 Pac. 282; Simonton v. Simonton, 33 Idaho 255, 193 Pac. 386; Hampshire v. Woolley, 72 Utah 106, 269 Pac. 135; In re Rogers' Estate, 75 Utah, 290, 284 Pac. 992; In re Singleton's Estate, 26 Nev. 106, 64 Pac. 513; Caron v. Old Reliable G. M. Co., 12 N. M. 211, 78 Pac, 63, 6 Ann. Cas. 874; Goodin v. Casselman, 51 N. D. 543, 200 N. W. 94; Harrington v. Jones, 53 Or. 237, 99 Pac. 935; Leach v. Misters, 13 Wyo. 239, 79 Pac. 28.

In the case at bar, respondent's petition to the district court sitting in probate disclosed upon its face the fact that petitioner was seeking equitable relief based upon an outright deed of many years' standing and which on its face vested title in the decedent. This relief could be had only by a civil action in a court of equity. Upon the ascertainment of the equitable nature of the relief sought, we are of the opinion that the trial court was without jurisdiction to proceed further with the matter other than to dismiss the petition without prejudice as provided by section 10273 of the Code. The court should have so declared in its ruling on respondent's petition.

It does not follow from the conclusion which we have announced that *no* relief can be had under the provisions of sections 10268-10278, Revised Codes, in a district court sitting in probate. This court has held that proceedings under these sections are "akin to the approval of claims against an estate." In re Bank's Estate, 80 Mont. 159, 169, 260 Pac. 128, 132. As stated by the Supreme Court of California, "A statutory proceeding in probate court for specific performance of decedent's written contract * * * is suited to cases of ordinary contracts, where there is no real controversy as to respective parties' obligation." Bewick v. Mecham, 26 Cal. (2d) 92, 156 Pac. (2d) 757, 157 A. L. R. 1277.

The same rule is stated in identical language in Pomeroy's Specific Performance of Contracts, 3rd Ed., page 993, section 497.

In accordance with the conclusions herein expressed, an ordinary contract for the sale of real estate, where the instrument is in writing and is produced in support of the claim and where no controversy over the claim exists, might properly be considered and passed upon by the district court sitting in probate.

*Doubtfulness of Respondent's Claim.* While this appeal presents other questions entitled to consideration, it is our opinion that the controlling question before us is this: Under all the facts and circumstances of his claim, sec. 10271, is petitioner's right to have the deed in question declared a mortgage doubtful? Sec. 10273.

In approaching this question we do not overlook the rule ██ repeatedly announced by this court that where there is substantial evidence to support the findings of the trial court we will not interfere. Sanders v. Lucas, 111 Mont. 599, 111 Pac. (2d) 1041, and cases cited; State ex rel. Anderson v. Gile, Mont. 172 Pac. (2d) 583, and cases cited. However, in a case of this sort arising under sections 10268 to 10273, where the question presented is whether an asserted right is doubtful, we think it is our clear duty to pass upon the question of such doubt and to decide the case accordingly.

*Burden of Proof.* It is well settled that the burden of proof in such a case as this rests upon the person who seeks to have a deed declared a mortgage. Jones on Mortgages, Vol. 1, section 409, states the rule as follows: ''The presumption is that an absolute conveyance is what it purports on its face to be, and the burden of proof that the instrument is a mortgage or security for a debt rests upon the grantor or other party who makes that contention.'' Citing many authorities in the accompanying case note number 19, including Elling v. Fine, 53 Mont. 481, 164 Pac. 891, Ann. Cas. 1918C, 752; Gibson v. Morris State Bank, 49 Mont. 60, 140 Pac. 76. At page 512 the same author says: ''The proof must be clear, unequivocal and convincing.'' Citing authorities, including Harrington v. Butte & Superior Copper Co., 52 Mont. 263, 157 Pac. 181; Gassert v. Bogk, 7 Mont. 585, 19 Pac. 281, 1 L. R. A. 240. To the same effect is 41 C. J. 345, section 114.

After careful examination of the record and consideration of the briefs of counsel we are unable to reach any other conclusion than that respondent has failed to sustain the burden imposed upon him by law in a case of this sort and that his claim is not free from doubt. This conclusion rests upon the following circumstances, among others:

(1) While oral testimony of the contents of a lost instrument is admissible under our statute after proof of the loss of the original, sec. 10516, Rev. Codes of 1935, it should be carefully scrutinized in a case of this sort. In 23 C. J. 33, sec. 1772, it is said: ''The bias of a witness has a well known and pernicious influence in quickening or deadening his memory and much allowance is made therefor in weighing testimony, even though he is of good character. This is especially true where he is testifying to * * * the contents of a lost document.'' See also, 32 C. J. S., Evidence, sec. 1026 p. 1065. At page 36 the same treatise, referring to interested witnesses, says: ''Their memories are much inclined to accord with their desires.'' See also, 32 C. J. S., Evidence, sec. 1028, p. 1066.

When, as in this case, an interested party who has made no

payments on an alleged mortgage for seven or eight years, comes into an estate with a claim based upon his own and his son's alleged recollection of the contents of lost letters written ten years before, certainly such testimony belongs in the doubtful class.

(2) It seems doubtful too; that anyone would accept a mortgage which by its terms did not mature until "any time" the mortgagor chose to pay it. Such things too, as the failure to mention interest or give a note for the indebtedness, while not conclusive, are entitled to consideration for the doubt they raise rather than for the conviction they carry. It also seems doubtful to us that Mrs. Day, if she were only a mortgagee, would have made extensive repairs and improvements on the mortgaged premises. All these circumstances, in our opinion, tend to cast a grave doubt on the merits of respondent's claim, which as we have already indicated, is based upon verbal testimony concerning the contents of lost instruments of considerable antiquity. See Reeves v. Littlefield, 101 Mont. 482, 486, 54 Pac. (2d) 879.

*Motion to Dismiss.* Respondent has filed a motion to dismiss this appeal on the ground that the district court's order entered January 5, 1946, from which this appeal is taken, is not an appealable order within the meaning of section 9731, Revised Codes of 1935, as amended, Laws 1941, c. 41, since it is not an order "against or in favor of directing the * * * conveyance of real property." Likewise, on the ground that the order is a conditional one and that the court's order of May 24, 1946, rather than its order filed January 5, 1946, is the appealable one. The record discloses that after the rendition of the court's order filed January 5, 1946, in which the court directed the administrator to convey the lots in question to petitioner upon payment of $1,141.66, respondent filed a petition showing that he had paid said sum of money as ordered and prayed for the execution of a deed accordingly. The court thereupon made an order dated May 24, 1946, granting petitioner's motion and directing the administrator of the estate to execute a convey-

ance of the lots in question to petitioner. On the same day the court also made an order staying the delivery of said deed pending the determination of this appeal which had then been taken. The question presented is whether the court's order filed January 5, 1946, was an interlocutory order requiring further action on the part of the court to determine the rights of the petitioner and appellant or was it a final judgment or order from which an appeal lies. A judgment is the "final determination of the rights of the parties to an action or proceeding." Sec. 9313, Rev. Codes of 1935. An interlocutory judgment is one which is "made before a final decision for the purpose of ascertaining a matter of law or fact preparatory to a final judgment." 31 Am. Jur., sec. 434, page 94; citing authorities in the accompanying case note, number 11, including Grant v. Phoenix Mutual Life Ins. Co., 106 U. S. 429, 1 S. Ct. 414, 27 L. Ed. 237. To the same effect are the statements of law contained in 3 C. J. sec. 258, page 441; 4 C. J. S., Appeal and Error, sec. 94, p. 184.

"[A] final judgment * * * is one which ends suit in court wherein entered and finally determines the parties' rights." Potvin v. Pacific Greyhound Lines, 130 Cal. App. 510, 20 Pac. (2d) 129, 130.

"A decree may be partly final and partly interlocutory; final as to its determination of all issues of fact and law and interlocutory as to its mode of execution." Perry v. West Coast Bond & Mortgage Co., 136 Cal. App. 557, 29 Pac. (2d) 279, 280.

Respondent cites and relies chiefly on the three following cases: Ringling v. Biering, 83 Mont. 391, 272 Pac. 688. That case was one in which part of the pleadings consisted of defendant's cross-complaint which prayed cancellation of certain notes and damages for breach of contract. Judgment was entered dismissing the cross-complaint and from that judgment defendants attempted to appeal. The court held that the judgment dismissing the cross-complaint was one made in the progress of determination of the issues to be finally considered

and that it was not therefore appealable. The dissimilarity of that case to the one at bar is apparent.

Heater v. Boston & Montana Corp., 84 Mont. 500, 507, 277 Pac. 11, was a mortgage foreclosure suit in which decree was entered that the property be sold subject to valid, existing, prior liens or other rights which might be adjudged to be prior to the lien of the mortgage and also subject to the terms of certain stipulations between it and a mechanic's lien claimant. These rights were not adjudicated and the court held the decree was not final but interlocutory and hence not appealable.

Security-First National Bank of Los Angeles v. Superior Court, 132 Cal. App. 683, 23 Pac. (2d) 1055, 1059, was a quiet title suit in which two decrees were entered by the court. The first one was expressly referred to as an "interlocutory decree" and was entered July 28, 1931. This so-called interlocutory decree was to the effect that if the San Diego bank paid to the Security Bank $14,000 within three months, title to the property should be quieted in it. Otherwise it would be quieted in the Security Bank. At a later date by express order of the court embodies in the first judgment, a further hearing was had for the sole purpose of receiving proof as to whether the payment had been made. It appearing that it had not been made, a so-called "judgment quieting title" was entered. Thereafter the San Diego Trust and Savings Bank moved for a new trial, which was granted over objection. On a later petition for certiorari the appellate court held that the second decree was the final one and that the motion for a new trial was properly granted. There are several points of difference between the California case and our own. In the former, all parties, including counsel and the trial court, understood that the first judgment was not intended to be final and that the second judgment which was denominated "judgment quieting title" expressly referred to the first one as an interlocutory judgment. Moreover, in the California case, the first judgment expressly continued the trial of the case to October 30, 1931, for the sole purpose of receiving proof as to whether or not payment had

been made by the San Diego bank. In our case the court's decree of December 31, 1945, filed January 5, 1946, expressly fixed the rights of the parties and no further order was necessary to carry into effect such rights. The court's order of May 24, 1946, while entirely proper to carry out the terms of the original judgment was not at all necessary so far as the determination of the rights of the parties concerned as it did not add anything to those rights already adjudicated. The court's order of May 24, 1946, was to preserve the status quo pending the outcome of the appeal. It too was a proper order but unnecessary as a further adjudication of the rights of the parties.

In short, all the circumstances in the California case pointed to the second decree as being in truth and fact the final one while in our case the further orders of May 24th were clearly in the nature of interlocutory orders.

We hold that the court's order entered January 5, 1946, was a final order and that appeal from same was proper.

We find no merit in the contention that the court's order from which the appeal was taken is not an appealable order under subdivision 3 of section 9731 because said order "is not an order against or in favor of directing the conveyance of real property." The statute under which this action is brought relates to procedure for "making conveyance of real estate." Appellant's petition as well as the trial court's order referred in express terms to conveyance of real property.

In Estate of Tuohy, 23 Mont. 305, 308, 58 Pac. 722, 723, this court held that a lease of realty was not a "conveyance" as that term is used in section 9731. In its opinion, the court said: "We apprehend that the term [conveyance] * * * falls within the definition of that term as applied to the actual transfer of the title to lands and interests therein." That is exactly what petitioner is asking in this case, namely, an actual transfer of the title to land. In our opinion an appeal lies from the trial court's order as one directing the conveyance of real property. In view of the foregoing conclusions which we deem

decisive of the case, we consider it unnecessary to discuss other assignments of error.

The order of the trial court is reversed with directions to dismiss respondent's petition without prejudice to his right to proceed by action under section 10273, Rev. Codes of 1935.

Mr. Chief Justice Adair and Associate Justices Angstman, Cheadle, and Metcalf concur.

Rehearing denied March 20, 1947.