DA 24-0670

FILED

07/08/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0670

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 146

IN THE MATTER OF THE ESTATE OF

ROSEMARY E. COLVER,

Deceased.

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and For the County of Sanders, Cause No. DP-17-16
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Thomas J. Stusek, Stusek Law Firm, P.C., Bozeman, Montana

For Appellee:

Don C. St. Peter, Logan Nutzman, Makayzia Counts, St. Peter
O'Brien Law Offices, P.C., Missoula, Montana

Submitted on Briefs:  April 30, 2025

Decided:  July 7, 2025

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 The Colver Land Trust, and Bruce Larsen and Karin Lance, in their capacities as co-trustees of the Colver Land Trust, appeal the judgment of the Twentieth Judicial District Court, Sanders County, denying their motion for summary judgment and granting Gretchen Larsen's motion for summary judgment. We restate and address the following issues:

> *Issue 1: Did the District Court, while sitting in probate, lack subject matter jurisdiction to adjudicate the Colver Land Trust's claim that it equitably owned real property held by the decedent's estate?*

> *Issue 2: Did the District Court, while sitting in probate, err by ruling the Will devised a life estate in favor of Gretchen?*

¶2 We reverse in part, affirm in part, and remand with instructions.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In 1999, Rosemary Colver executed the Colver Land Trust (Land Trust) agreement. The Land Trust named Rosemary's five children—Bruce, Karin, Gretchen, Eric, and Terry—as beneficiaries and appointed Bruce and Karin as co-trustees. Rosemary and her husband, Richard, retained life estates in any real property held by the Land Trust.

¶4 The Land Trust agreement provided that, upon the sale of Land Trust real property, distribution of the sale proceeds shall be made to the beneficiaries of the Land Trust and the Land Trust shall be terminated if it no longer held any real property. Rosemary quitclaimed real property she owned in Carbon County (Red Lodge Property) to the Land Trust. In 2004, the Land Trust sold the Red Lodge Property and used the proceeds to purchase other real property in Carbon County (Boyd Property). The Land Trust's beneficiaries executed a document (2004 Acknowledgment) approving the sale of the Red

2

Lodge Property and purchase of the Boyd Property. The 2004 Acknowledgment also stated that, "irrespective" of the Land Trust's distribution and termination requirements, the beneficiaries agreed proceeds from sales of the Land Trust's real property "can be utilized by the Co-Trustees to acquire additional, replacement property" on the Land Trust's behalf.

¶5 In June 2010, Rosemary and Richard purchased real property in Sanders County (Sanders County Property). A warranty deed conveying the Sanders County Property to Rosemary and Richard identified them as joint tenants with right of survivorship. Approximately six months after Rosemary and Richard purchased the Sanders County Property, the Land Trust sold the Boyd Property.

¶6 Richard quitclaimed his interest in the Sanders County Property to Rosemary on April 12, 2012. That same day, Rosemary executed her Last Will and Testament (Will). Section Fifth of the Will concerned the Sanders County Property and stated Rosemary "devise[d] my [Sanders County Property] in trust to my Trustee, hereinafter named, for the benefit of my husband [Richard] and my daughter, Gretchen." It also provided Richard and Gretchen with the right to reside on the Sanders County Property until they chose to live elsewhere or died. The Will nominated Bruce and Gretchen to serve as co-personal representatives and co-trustees.

¶7 Rosemary died on February 4, 2017. Bruce and Gretchen applied for informal probate of the Will and to be appointed as co-personal representatives of Rosemary's estate (Estate) in Cause No. DP-17-16, which the court granted. The final accounting filed by Bruce and Gretchen identified the Sanders County Property as an asset of the Estate to be distributed to The Rosemary E. Colver Trust. On May 18, 2018, Bruce and Gretchen

3

closed the Estate via sworn statement pursuant to § 72-3-1004, MCA. A deed of distribution executed by Bruce and Gretchen on behalf of the Estate transferred the Sanders County Property to The Rosemary E. Colver Trust without reference to any other interests. The deed of distribution was recorded on June 26, 2018.

¶8 On February 21, 2023, Gretchen filed a Petition for Appointment of Personal Representative to Administer Probate (Gretchen's Petition) in the closed probate matter, Cause No. DP-17-16. Gretchen's Petition stated that Richard—who had survived Rosemary—was now deceased. Gretchen contended Section Fifth of the Will granted her a life estate in the Sanders County Property, which was not reflected in the June 26, 2018 deed of distribution. Gretchen requested the court appoint her as personal representative "for the sole purpose of administering the Estate and correcting the distribution of the assets of the Estate," and to issue an order (1) invalidating the June 26, 2018 deed of distribution, and (2) directing the personal representative to record a new deed of distribution "in favor of Bruce Larsen and Gretchen Larsen as Trustees, including the life estate in favor of Gretchen Larsen." Bruce and Gretchen subsequently stipulated to "re-open" the probate matter "to administer the distribution of the assets" and re-appoint themselves as co-personal representatives of the Estate.

¶9 On October 20, 2023, the Land Trust and Bruce, purportedly acting in his capacities as co-personal representative of the Estate and co-trustee of the Land Trust, filed a petition (Land Trust Petition)[1] in the probate case, requesting the court determine that the Land

---

[1] The body of the petition stated Bruce invoked the jurisdiction of the probate court in his capacity as co-personal representative of the Estate, but it was signed by counsel on behalf of the Land

4

Trust owned the Sanders County Property. The Land Trust Petition alleged that Richard "provided the funds" to purchase the Sanders County Property, and that Rosemary repaid Richard using proceeds from the Land Trust's subsequent sale of the Boyd Property. The Land Trust Petition contended a "mistake of fact" occurred when Richard quitclaimed his interest to Rosemary in 2012 because the Sanders County Property should have been conveyed to the Land Trust. The Land Trust Petition requested the probate court determine that the Land Trust owned the Sanders County Property as replacement real property for the Boyd Property.

¶10 Gretchen moved for summary judgment on her claim that Section Fifth of the Will devised a life estate interest in the Sanders County Property in favor of Gretchen. Bruce and the Land Trust filed a cross-motion for summary judgment, asserting the Sanders County Property was not an asset of the Estate, and the Estate had been unjustly enriched by possessing the Sanders County Property. The Land Trust alleged that, in 2011, it loaned Rosemary proceeds from the Boyd Property sale, and Rosemary used those funds to satisfy debt encumbering the Sanders County Property with the "understanding" she would convey the Sanders County Property to the Land Trust. Bruce and the Land Trust argued that the Sanders County Property equitably belonged to the Land Trust as replacement real property subject to the 2004 Acknowledgment signed by the Land Trust beneficiaries.

---

Trust, and Bruce and Karin as co-trustees of the Land Trust. Because the relief sought was a determination that the Land Trust equitably owned the Sanders County Property, we refer to that petition as the Land Trust Petition.

¶11 The District Court, sitting in probate, issued an order denying Bruce and the Land Trust's motion for summary judgment and granting Gretchen's motion for summary judgment. The court concluded that the Land Trust did not equitably own the Sanders County Property, the Will devised the Sanders County Property "in trust to [Rosemary's] Trustee, for the benefit of her husband and daughter, Gretchen," and Gretchen had a valid life estate pursuant to Section Fifth of the Will.

**STANDARDS OF REVIEW**

¶12 "We review de novo whether a district court has subject matter jurisdiction." *In re Estate of Scott*, 2023 MT 97, ¶ 9, 412 Mont. 303, 529 P.3d 867. We review de novo a district court's decision on a motion for summary judgment, applying the same analysis as the district court based upon M. R. Civ. P. 56. *In re Estate of Harmon*, 2011 MT 84A, ¶ 14, 360 Mont. 150, 253 P.3d 821. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3).

**DISCUSSION**

¶13 *Issue 1: Did the District Court, while sitting in probate, lack subject matter jurisdiction to adjudicate the Colver Land Trust's claim that it equitably owned real property held by the decedent's estate?*

¶14 The issue of subject matter jurisdiction was not raised below, but Gretchen briefly addresses it on appeal.[2] Lack of subject matter jurisdiction cannot be waived and may be

---

[2] Gretchen argues that Bruce and the Land Trust's claim relates to the internal affairs of trusts, which deprives the probate court of subject matter jurisdiction. Because we hold that the probate

raised by the parties or the court at any stage of the proceeding. *Stanley v. Lemire*, 2006 MT 304, ¶¶ 31–32, 334 Mont. 489, 148 P.3d 643. This Court has an independent duty to determine whether subject matter jurisdiction exists. *Stanley*, ¶ 32. Accordingly, we review on appeal in this matter whether the probate court had subject matter jurisdiction to adjudicate the Land Trust's claim that it equitably owned the Sanders County Property.

¶15 A district court sitting in probate has limited, not general, subject matter jurisdiction as provided by § 72-1-202, MCA. *Estate of Scott*, ¶ 10. The types of cases a probate court may hear consist of matters related to "estates of decedents, including construction of wills and determination of heirs and successors of decedents." Section 72-1-202(1)(a), MCA. A probate court lacks the power to hear or determine any matters other than those permitted by § 72-1-202, MCA, or which are necessary to exercise the powers conferred by that statute. *Haugen v. Haugen*, 2008 MT 304, ¶ 9, 346 Mont. 1, 192 P.3d 1132.

¶16 Creditor claims are considered claims related to an estate and may be settled by a probate court. *Estate of Scott*, ¶ 10. Equitable claims arising from a breach of contract fall outside a probate court's limited subject matter jurisdiction. *Estate of Scott*, ¶ 17; *In re Estate of Cooney*, 2019 MT 293, ¶¶ 12–13, 398 Mont. 166, 454 P.3d 1190; *In re Day's Estate*, 119 Mont. 547, 551–52, 117 P.2d 862, 865–66 (1947). An equitable claim is a "right or interest in the estate, an equitable ownership [ ] after the claims against the estate have been allowed and paid, whereas a creditor claim is a demand against the estate which

---

court lacks subject matter jurisdiction on equitable-claim grounds, we need not address the arguments concerning the Montana Uniform Trust Code, Title 72, chapter 38, MCA.

must be paid or satisfied in advance of distribution." *Estate of Scott*, ¶ 11 (quotations and citation omitted). We have also held that probate courts lack subject matter jurisdiction to decree specific performance of an oral contract, *see Estate of Cooney*, ¶ 7, or decide questions of title to or ownership of real property raised by a third party against an estate in a probate administration. *In re Day's Estate*, 119 Mont. at 552, 117 P.2 at 865–66; *In re Estate of Thomas*, 216 Mont. 87, 90, 699 P.2d 1046, 1048 (1985).

¶17 On appeal, Bruce and the Land Trust state that "this case is one both of constructive trust (unjust enrichment) and debtor/creditor relationship" because Rosemary, during her lifetime, allegedly used a loan from the Land Trust to satisfy debt encumbering the Sanders County Property "with the implicit understanding that she would then deed the Sanders County Property to the Colver Land Trust in repayment of such loan." They argue the Estate holds the Sanders County Property in constructive trust for the Land Trust's beneficiaries because Rosemary failed to carry out her implicit promise to transfer the Sanders County Property to the Land Trust during her lifetime.

¶18 Bruce and the Land Trust argue that *Estate of Cooney* mandates the imposition of a constructive trust on the Estate. Before we can reach that argument, though, we must address a threshold issue articulated by *Estate of Cooney*—whether there is a jurisdictional bar to the Land Trust's claim of equitable ownership. In *Estate of Cooney*, we held the district court, sitting in probate, lacked subject matter jurisdiction to adjudicate a breach of contract claim seeking specific performance of a succession contract. *Estate of Cooney*, ¶ 13. The decedent's will left his real property to one son, contravening the decedent's divorce property settlement agreement, which stated that his will would devise real

8

property owned at his death equally among his children. *Estate of Cooney*, ¶¶ 2, 9. After the decedent's will was admitted to formal probate, the decedent's daughters moved to invalidate portions of the will devising real property entirely to his son and requested the probate court enforce the terms of the property settlement agreement. *Estate of Cooney*, ¶ 3. The probate court concluded it lacked subject matter jurisdiction over equitable claims and denied the daughters' motion. *Estate of Cooney*, ¶ 3. We affirmed the probate court's ruling, concluding that the daughters' claims were equitable in nature because they sought specific performance of the property settlement agreement. *Estate of Cooney*, ¶¶ 12–13, 16. We held that as third-party beneficiaries to the agreement, the daughters had "rights or interests in the estate—in other words, a *claim to equitable ownership*." *Estate of Cooney*, ¶ 13 (emphasis added). Accordingly, we held that the remedy available to the daughters was "'not a proceeding in the probate court . . . but an action in equity in a court of general jurisdiction.'" *Estate of Cooney*, ¶ 11 (quoting 79 Am. Jur. 2d *Wills* § 343 (2003)).

¶19 After concluding that the probate court did not have jurisdiction, we noted a constructive trust may be a remedy available to the daughters in a civil action to enforce their rights under the property settlement agreement:

> Daughters possess a contract claim, enforceable through a civil action against the personal representative of [decedent's] estate, who would be bound by any judgment entered in such an action. Distribution of [decedent's] estate in the probate matter will be affected only if the Daughters obtain a judgment concluding that he breached the contract; the Daughters may seek relief in their contract action in the form of a constructive trust on the property, and the probate court can effectuate any resulting judgment in its administration of the estate.

9

*Estate of Cooney*, ¶ 16.

¶20    In *Estate of Scott*, we reaffirmed our holding in *Estate of Cooney* and again concluded the probate court lacked subject matter jurisdiction to enforce an unfulfilled agreement made by the decedent during his lifetime to transfer property to his children. *Estate of Scott*, ¶ 17.  The decedent's divorce settlement agreement stated he would transfer his farm equity to his children "'when, in his judgment, they have reached a sufficient level of maturity.'"  *Estate of Scott*, ¶ 3.  Before his death, the decedent did not determine whether his children were sufficiently mature and never transferred his equity to them. *Estate of Scott*, ¶ 5.  The children filed a creditor claim against the estate in the probate matter. *Estate of Scott*, ¶ 5.  The  children argued the decedent's agreement to "transfer his equity" in his farm was "not a term of a contract, but a debt he incurred during his lifetime." *Estate of Scott*, ¶ 14.  Rather than seeking specific performance of a contract, the children asserted they were "'simply seeking payment of an obligation incurred by [decedent] during his lifetime.  Where [decedent] failed to fulfill that obligation . . . it becomes an obligation of [decedent's] estate.'"  *Estate of Scott*, ¶ 15.

¶21    This Court concluded the children's demands for equity in the decedent's farm were "materially indistinguishable from" the relief requested by the daughters in *Estate of Cooney*.  *Estate of Scott*, ¶ 16.  We noted that the key issue in *Estate of Cooney* "was whether the [d]aughters were bringing equitable claims to a probate proceeding."  *Estate of Scott*, ¶ 17.  Similarly, the decedent in *Estate of Scott* never completed his agreement before he died, and the relief the children were seeking essentially amounted to specific performance: the children asserted they owned the farm equity and requested the probate

court issue a judgment transferring the equity from the decedent's estate to the children in satisfaction of the agreement. *Estate of Scott*, ¶ 16.

¶22 As in *Estate of Cooney* and *Estate of Scott*, the probate court's limited subject matter jurisdiction does not extend to adjudicating the Land Trust's claim that it equitably owns the Sanders County Property. Although those cases involved agreements evidenced in writing, the "key issue" is whether Bruce and the Land Trust brought equitable claims to a probate proceeding. *Estate of Scott*, ¶ 17. The Land Trust Petition disclosed that the Land Trust—a third party—sought to challenge a deed of many years' standing, which on its face vested title of the land solely in Rosemary. The heart and substance of the relief requested is the exercise of an equitable power by the probate court to determine Rosemary was obligated to transfer the Sanders County Property during her lifetime and declare ownership of the Sanders County Property in favor of the Land Trust. Under their theory of recovery, the Land Trust and its beneficiaries have rights or interests in the Estate's real property, or put another way, "a *claim to equitable ownership*." *Estate of Cooney*, ¶ 13 (emphasis added). Simply characterizing the relationship between the Land Trust and the Estate as being one of debtor and creditor does not make it so.[3] *See Estate of Scott*, ¶¶ 15–16.

¶23 Bruce and the Land Trust themselves characterize the Will as "irrelevant" to deciding the Land Trust's claim of equitable ownership since, they assert, Rosemary "could not devise property that she did not equitably own." So, by their own admission, they are

---

[3] Notably, neither the Land Trust nor its co-trustees or beneficiaries filed a creditor claim in the probate proceeding.

11

not seeking a construction of the will or a determination of heirs and successors. *Estate of Cooney*, ¶ 13 (citing § 72-1-202, MCA). Rather, they assert that the Land Trust became the equitable owner of the Sanders County Property while Rosemary lived, and they request a judgment to enforce an "implicit understanding" by requiring the Estate to fulfill the promise Rosemary allegedly made and transfer the Sanders County Property to the Land Trust. "This is the prototypical case of an equitable claim," and the probate court does not have subject matter jurisdiction to adjudicate it. *Estate of Scott*, ¶ 16.

¶24 Subject matter jurisdiction is the threshold power and authority of a court to adjudicate a claim before it. *Alto Jake Holdings, LLC v. Donham*, 2017 MT 297, ¶ 28, 389 Mont. 435, 406 P.3d 937. An asserted claim for relief must be dismissed if it is determined the court lacked subject matter jurisdiction over that type of claim. *Gottlob v. DesRosier*, 2020 MT 210, ¶ 7, 401 Mont. 50, 470 P.3d 188 (citing M. R. Civ. P. 12(b)(1)); *see* M. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."). Because the probate court did not have subject matter jurisdiction over Bruce and the Land Trust's equitable claim, we reverse the court's decision as to that claim and remand with instruction to dismiss the Land Trust Petition.

¶25 *Issue 2: Did the District Court, while sitting in probate, err by ruling the Will established a life estate in favor of Gretchen?*

¶26 Gretchen contends the District Court, sitting in probate, correctly granted her motion for summary judgment on her claim that Section Fifth of the Will devised a life estate interest in the Sanders County Property to her. Bruce does not dispute any material facts

12

asserted by Gretchen or contest the probate court's interpretation of the Will granting Gretchen a life estate in the Sanders County Property. Rather, he and the Land Trust assert a claim of equitable ownership to the Sanders County Property over which the probate court lacked jurisdiction.

¶27 When interpreting a will, courts are "guided by the bedrock principle of honoring the intent of the testator." *In re Estate of Kuralt*, 2000 MT 359, ¶ 17, 303 Mont. 335, 15 P.3d 931. "The words of the instrument are to receive an interpretation which will give some effect to every expression, rather than an interpretation which will render any of the expression[s] inoperative." *In re Estate of Snyder*, 2000 MT 113, ¶ 15, 299 Mont. 421, 2 P.3d 238 (citation omitted).

¶28 In this case, Section Fifth of Rosemary's Will provided:

> I devise my [Sanders County Property] in trust to my Trustee, hereinafter named, for the benefit of my husband and my daughter, Gretchen. If my husband, Richard Colver, survives me, he may continue to reside in the home at [Sanders County Property] for as long as he wishes . . . If my daughter, Gretchen Larsen, survives Richard and me, she may reside in the home at [Sanders County Property], as long as she wishes on the sole condition that she pay the sum of $200 per month to my Trustee for the maintenance, taxes and insurance of such real property. This trust shall terminate upon the death of Gretchen Larsen or upon her decision not to reside in the home.

¶29 After finding there were no disputes of material fact, the probate court interpreted Section Fifth of the Will to specifically devise the Sanders County Property "in Trust to [Rosemary's] Trustee, for the benefit of her husband and her daughter, Gretchen." The probate court further determined Section Fifth of the Will evidenced Rosemary's intent to provide Gretchen with a life estate in the Sanders County Property and concluded "Gretchen's life estate in the Sanders County Property is valid" pursuant to the Will.

13

¶30 The probate court was correct. The Will unambiguously establishes that after Richard's death, Rosemary intended for Gretchen to reside on the Sanders County Property "as long as she wishes" or until Gretchen's death. The probate court correctly determined that Gretchen has a valid life estate in the Sanders County Property, and we affirm the court's judgment as to that claim.

## CONCLUSION

¶31 The District Court, sitting in probate, lacked subject matter jurisdiction to adjudicate Bruce and the Land Trust's claim of equitable ownership over the Sanders County Property. We reverse and remand to the District Court for dismissal of the Land Trust Petition. The District Court, sitting in probate, did not err by ruling the Will established a life estate in favor of Gretchen and the judgment is affirmed as to that claim.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE